Board of Commissioners of Madison County *v.* Brown.

No. 10,548.

BOARD OF COMMISSIONERS OF MADISON COUNTY *v.* BROWN.

BRIDGES.—*Failure to Repair.*—*Liability of County for Injury.*—*Damages.*—The liability of a county for injuries resulting from defective bridges did not cease by the taking effect of the road law of 1881, nor until road superintendents could be elected, in 1882.

SAME.—*Bridge.*—A primitive structure of logs or slabs, two feet above ground, built over a pond by road supervisors many years before the accident, was such a bridge as the county was bound to keep in repair.

SAME.—*Notice.*—*Diligence.*—The duty of the county to keep bridges in repair required active diligence to ascertain the need of repairs, so that, after defects had existed for a period of six months, the law will charge constructive notice of the need of repairs.

SAME.—*Contributory Negligence.*—A party injured by a defective bridge, who knew it was somewhat out of repair, may yet take such risks as most prudent men would take under like circumstances, without being chargeable with contributory negligence.

From the Madison Circuit Court.

*W. R. Pierse* and *C. B. Gerard,* for appellant.

*H. D. Thompson* and *T. B. Orr,* for appellee.

MORRIS, C.—The appellee presented to the appellant a claim for damages alleged to have been sustained. by reason of an injury to his mare while crossing over a bridge on one of the highways of the county of Madison.

The complaint describes the highway, and alleges that fifteen years before the appellant had erected, and since partially maintained, a wooden bridge along the line of said highway, over and across a certain pond ; that said bridge, when first erected, was an open bridge; that it had afterward decayed and become rotten and unsound, and, by the carelessness and neglect of the appellant, was allowed to become out of repair and unsafe and dangerous; that on the 24th day of November, 1881, the appellee drove his team, consisting of one horse and a mare attached to a wagon, along said public highway and upon said bridge, and that by reason of said bridge being out of repair, and without fault or neglect on his part, his

said mare, while attempting to cross said bridge, thrust her foot through said bridge, which caused her to fall, and in her attempts to extricate her foot she broke and so injured the same as to render her wholly worthless; that said injury was occasioned solely by the fault and negligence of the appellant.

The board refused to allow the claim, and the appellee appealed to the circuit court. The cause was submitted to a jury for trial in the circuit court. The appellee having introduced his evidence in support of his claim, the appellant filed a demurrer to the evidence. The court overruled the demurrer, and final judgment was rendered for the appellee.

The errors assigned are as follows:

1st. The court erred in overruling the appellant's demurrer to the evidence.

2d. The court erred in rendering judgment for the appellee.

The questions presented by the record and discussed by the appellant are:

*First.* Was the appellant, at the time the injury to the appellee's mare happened, bound to keep the bridges upon the public highways of the county in repair and reasonably safe for travel?

*Second.* Was the structure upon which the appellee's animal was injured a bridge within the meaning of the law, and such an one as the board of county commissioners was bound to keep in repair?

The appellant contends that the act of 1881, in relation to the control and repair of highways, became a law on the 19th day of September, 1881, some two months before the injury complained of; that by this law the superintendence and control of highways passed from the board of county commissioners to the several township superintendents, whose election is provided for by this act; that as this act makes it the duty of these superintendents to repair highways and bridges in their respective townships, the boards of county commissioners are no longer liable for the non-repair of bridges, etc.

Granting the proposition contended for by the appellant, it can not affect the question now presented for decision. The act should not be construed to take from the county board their control of, and power over, the public bridges of the county until the election of the township superintendents provided for. By the act of 1881, R. S. 1881, section 5064, the township superintendents were not to be elected until the first Monday in April, 1882. Until the election of such superintendents the county boards, under section 2892, R. S. 1881, then in force, had control of all bridges in the county, and it was their duty to keep the same in repair. Assuming the structure in question to be a bridge within the meaning of the law, it was, we think, the duty of the appellant to keep it in repair and reasonably safe for travel at the time the appellee's mare was injured. There was then no superintendent to take charge of the bridges in the several townships of the county, and it was the duty of the county board to do so. *House* v. *Board, etc.*, 60 Ind. 580 (28 Am. R. 657); *Pritchett* v. *Board, etc.*, 62 Ind. 210.

In the former case the court says: "The obligation thus imposed upon the board, to cause all bridges in the county to be kept in repair, with ample power to provide means to discharge the obligation, carries with it a corresponding right in every one having occasion, in the usual course of travel, to use the bridges, to have the obligation fulfilled, and the bridges kept in repair. And it seems to us to follow, that where the board negligently suffers such bridge to be out of repair, whereby a person, in the ordinary use of it, is injured in person or property, without his own fault, he must have an action against the board for damages; otherwise, there will be a wrong without a remedy."

At the time the appellee's mare was injured it was, by the express provisions of the statute, the duty of the board to keep the bridges of the county in repair, and the county still had, as before, the control of means to discharge the duty and obligation thus imposed. It follows that if the board negli-

gently failed to discharge the duty enjoined by the statute, it is responsible to one who is thereby injured without fault on his part.

*Second.* Was the structure upon which the appellee's mare was injured a bridge which the appellant was bound to repair? and, if so, was it out of repair, and was the appellee's mare injured thereby without fault on his part? It is said that sec. 2892 must be construed in connection with secs. 2885, 2886 and 2887, and counsel refer us to *Driftwood, etc., Turnpike Co.* v. *Board, etc.,* 72 Ind. 226. The latter sections relate to advances to be made for the construction and repair of bridges, and not to the causing of repairs to be made. In the case referred to the court says : " While the commissioners must cause the bridges to be kept in repair, the expense must be borne by the road district, so far as it is able, * and the residue by the county."

The testimony tended strongly to show that the appellee's mare was injured in passing over what the witnesses all call a bridge, constructed many years ago over a pond crossed by the public highway upon which he was travelling. It also showed that this bridge or structure was, at the time the injury occurred, badly out of repair, and that it had been out of repair for several months prior to the injury. One of the witnesses describes the structure as follows : " It appears to have been built up in a kind of pen fashion. It is built up about three logs high ; three stringers laid across, and slabs split and laid over them to make a bridge. I think it is now in the same place. It is about two feet from the ground, and seventy-five yards long ; it was built across a button-wood pond. There is a fence on both sides of the bridge. Those who travel upon the highway must pass over the bridge or go a mile out of the way to get round it." There was testimony showing that the bridge had been built some twenty-six years before the accident occurred, by the supervisors of the road district in which it is situate. The testimony also showed that some repairs had been made upon the bridge ; that there

was considerable public travel over it, and that some time be-
fore the appellee's mare was injured the ends of the timbers
of the bridge had become decayed and rotten, and that the
slabs had been covered with dirt, forming a narrow passage
barely sufficient for a wagon to pass over the bridge; that
the appellee and others, though they knew the bridge to be
somewhat unsafe, had been in the habit of passing over it
with teams; that a team passed over it on the same day, and
a few hours before the appellee's mare fell through it and was
injured.   As the appellee drove upon the bridge the dirt that
had been thrown upon the slabs gave way, the mare's foot
went through, and was so injured as to render her worthless.

There can be no doubt that the structure, though some-
what simple and primitive in construction, constituted a
bridge within the ordinary and usual meaning of the word.
Any structure of wood, stone, brick or iron, raised over a
river, *pond*, lake or across a valley, is called a bridge.   It
is thus defined by Webster.   See, also, American Cyclopædia,
vol. 3, art. Bridge.   It must be held, we think, that it was the
duty of the county to cause this bridge to be kept in repair.

There is no testimony in the case even tending to show that
the board of commissioners had any actual knowledge of the
existence of the bridge in question, or that it was out of re-
pair.   But the testimony showed that the bridge had been
out of repair for at least six months before the appellee's
mare was injured, and if the board is to be charged with con-
structive notice, as are cities, then, upon the facts proved,
it must be held to have had notice of the condition of the
bridge.   If it is the duty of county boards to repair, or cause
to be repaired, the bridges of the county, such boards are un-
der obligation to the public to exercise a reasonable degree
of affirmative and active diligence to ascertain the condition
of the public bridges of the county, and see to it that they
are kept in repair and reasonably safe and fit for travel.   If,
as all the testimony tends to show, this bridge had been out
of repair for six months prior to the injury complained of,

the appellant could not, consistently with the exercise of reasonable diligence, have been ignorant of its condition.    Under such circumstances, the appellant will be held to have had notice.    *City of Indianapolis* v. *Scott*, 72 Ind. 196; *Rapho* v. *Moore*, 68 Pa St. 404 (8 Am. R. 202); 2 Dillon Mun. Corp. (3d ed.) 1024; *Dewey* v. *City of Detroit*, 15 Mich. 307; *Serrot* v. *Omaha City*, 1 Dillon, 312.

We also think that the testimony tends to show that the appellee was not guilty of contributory negligence.    At the time he attempted to drive over the bridge, it was in use by the public.    The appellee had been accustomed to pass over it, and thought he could safely do so at the time.    Others had been passing over it and one team had gone over it safely a few hours before he attempted to do so.    He, and the man who was with him, testified that he drove in a walk over the bridge.    He also testified that he had stopped holes in the bridge, and always did so, before venturing upon it, when he knew there were holes in it; that he did not know that the bridge was dangerous where the mare broke through it.

From all the facts it may be fairly inferred that the appellee proceeded with due and proper care.    Though he knew the passage was narrow, and, therefore, not as safe as it would have been if in proper repair, still the law allowed him to take, without fault on his part, the risk of crossing it.    Shearman & Redf. on Negligence, sec. 31, says: "Nor even where the plaintiff sees that the defendant has been negligent, is he bound to anticipate all the perils to which he may *possibly* be exposed by such negligence, or to refrain absolutely from pursuing his usual course on account of risks to which he is *probably* exposed by the defendant's fault.    Some risks are taken by the most prudent men; and the plaintiff is not debarred from recovery for his injury, if he has adopted the course which most prudent men would take under similar circumstances."    *Turner* v. *Buchanan*, 82 Ind. 147 (42 Am. R. 485); *Jones* v. *Housatonic R. R. Co.*, 107 Mass. 261; *Morse* v. *Richmond*, 41 Vt. 435; *Johnson* v. *Beldon*, 2 Lans. (N.

Y.) 433; *Board, etc.,* v. *Deprez,* 87 Ind. 509. We conclude that there is no error in the record.

PER CURIAM.—The court orders, upon the above opinion, that the judgment below be affirmed, at the costs of the appellant.