The Board of Commissioners of Gibson County v. Emmerson *et al.*

Filed May 27, 1884.

———————————

No. 11,510.

THE BOARD OF COMMISSIONERS OF GIBSON COUNTY *v.* EMMERSON ET AL.

COUNTY COMMISSIONERS.—*Claim Against County.*—*Pleading.*—In an action against a board of county commissioners, originating before the board itself, the complaint, both before the board and in the circuit court on appeal, need only contain a succinct and detailed statement of the claim.

SAME.—*Liability.*— *Unsafe Bridges.*—*Negligence.*— The act of March 2d, 1883, "concerning highways and supervisors thereof," Acts 1883, p. 62, does not relieve boards of county commissioners of any responsibility formerly devolving upon them in regard to unsafe or defective bridges.

From the Gibson Circuit Court.

*L. C. Embree*, for appellant.

*T. R. Paxton*, for appellees.

NIBLACK, J.—During the year 1876, the board of commissioners of the county of Gibson caused a wooden bridge to be constructed across Pigeon Creek, at a point where a public highway of that county crossed that stream, and the bridge

so constructed was thereafter continuously used in connection with, and as a part of, the highway, until it broke down as hereinafter stated.

Its middle or main span was near forty feet in length, and a similar bridge could not now be constructed for probably less than $300.

On the 10th day of July, 1883, Garrett M. Emmerson and Zachary T. Emmerson were the owners of a portable steam engine, used in threshing wheat, and capable of being drawn from place to place like a wagon.

On that day the Emmersons, who are the appellees here, were, with the assistance of two mules and two horses, engaged in transporting their engine along the highway and across the bridge herein above named. ' When the persons in charge of the engine approached the bridge, they saw nothing unusual in its appearance, and drove upon it for the purpose of passing over it. While upon the middle or main span the bridge gave way and precipitated the engine into the bed of the stream below, carrying the mules with it. The engine was very seriously injured, and the mules were only rescued by cutting their harness to pieces and thus detaching them from the engine.

The Emmersons soon afterwards filed a claim before the board of commissioners of Gibson county for the damages resulting to them from the falling of the bridge, but that tribunal refused to allow the claim, or any part of it. Whereupon they appealed to the circuit court, where they filed an amended and more formal complaint, in two paragraphs, to both of which demurrers were overruled. A trial resulted in a verdict in favor of the Emmersons, assessing their damages at $185, and, over a motion for a new trial, they had judgment on the verdict.

The board of commissioners, appealing, first questions the sufficiency of the complaint. But, in proceedings like this, very little formality in pleading is required, and it is but seldom that any material question arises upon the pleadings. *Board,*

*etc.*, v. *Adams*, 76 Ind. 504; *Board, etc.*, v. *Armstrong*, 91 Ind. 528.

Both paragraphs of the complaint contained a succinct and detailed statement of an apparently reasonable claim against the county, and that was all that is necessary in any case commenced before a board of county commissioners. *Board, etc.,* v. *Loeb*, 68 Ind. 29; *Board, etc.,* v. *Gillum*, 92 Ind. 511.

The circuit court instructed the jury as follows:

"In this case, Gentlemen, if the plaintiffs have proven that the bridge in question was on a public highway of Gibson county, Indiana, that it had been built by the defendant, the Board of Commissioners of Gibson county, that the board negligently suffered the bridge to be out of repair, whereby the plaintiffs, in the ordinary use of the bridge, were injured in their property described in the complaint, without any fault on the part of the plaintiffs, in that view of the case the plaintiffs would be entitled to a verdict for whatever sum the evidence shows their property was damaged by reason of such defect. The county is not an insurer of all bridges in the county, but upon the subject of the alleged negligence the material inquiry is whether the bridge in point of fact was, at the time of the alleged injury and immediately before, out of repair, and whether the defendant, the board, under all the circumstances shown, was guilty of negligence in permitting the bridge to become and remain out of repair. If the defendant was not negligent in permitting the bridge to be out of repair, in that view of the case your verdict should be for the defendant. If the proof shows that the bridge was out of repair at and immediately before the alleged injury, and the defendant was negligent in permitting the bridge to be out of repair, and if you should further believe from the evidence that the agents of the plaintiffs were negligent in driving across the bridge, which contributed to the injury, in that view of the case your verdict should be for the defendant."

Counsel for the appellant concedes that this instruction stated the law as it existed previous to March 2d, 1883, cor-

rectly, but insists, with much earnestness and apparent confidence, that the act of that date, concerning highways (Acts 1883, p. 62), has so changed the relations of the board of county commissioners to the bridges within their respective counties as to render the instruction erroneous in its application to the facts of this case.

It is true that the act in question contains some new provisions on the subject of highways and bridges, but, in our opinion, these new provisions are neither so material nor so radical as counsel seeks to maintain them to be. It provides in section 5 that the supervisor of roads " shall carry into effect all orders of the trustee of the township in which the road district is situated, touching the highways and bridges therein, and keep the same in good repair." Sections 18 and 19, when construed together, probably require the supervisor, under the order of the township trustee, to construct all bridges and culverts within his road district which cost less than $50. Section 20 extends the road tax limit forty cents on each $100 of property, instead of twenty-five cents as formerly. But these provisions are merely auxiliary to the general power of county boards over roads and bridges, and do not relieve these boards of any responsibility which formerly devolved upon them on account of defective or unsafe bridges.

Section 11 of the act of March 3d, 1855, concerning the erection and repair of bridges (1 R. S. 1876, p. 239), provide that the boards of commissioners of the respective counties shall cause all bridges to be kept in repair, and that implied that such commissioners should adopt all measures reasonably necessary for that purpose. That section was continued in force as section 2892, R. S. 1881, and has not been superseded by any of the merely supplemental provisions of the act of March 2d, 1883, supra. The boards of commissioners still have general supervision over the bridges of their respective counties, and when either a township trustee or a supervisor omits to give a bridge within his territory proper

:attention, it is the duty of these boards to cause the omission to be supplied without unreasonable delay. As was said in the case of *House* v. *Board, etc.,* 60 Ind. 580 (28 Am. R. 657), suitable means have been provided to enable county boards to discharge this, and all kindred duties, concerning bridges under their charge. See, also, the cases of *Board, etc.,* v. *Deprez,* 87 Ind. 509 ; *Board, etc.,* v. *Brown,* 89 Ind. 48 ; *Board, etc.,* v. *Legg,* 93 Ind. 523.

In our estimation, therefore, the objection made to the instruction given by the circuit court can not be sustained.

It is, also, insisted that the damages are excessive, but there was evidence of a general character, independently of some itemized statements submitted, which tended very fully to sustain the verdict in respect to the amount of damages allowed by it. This precludes us from entering upon an analysis of the evidence having relation to the question of the damages.

Reference has been made in argument to some interrogatories, with answers attached, which were returned by the jury with their verdict, but there is nothing in the record showing that these interrogatories were submitted to the jury by the court, or which gives the slightest intimation as to the manner in which they came into the possession of the jury. Under such circumstances, no question is presented by the answers to these interrogatories. *Cleveland, etc., R. W. Co.* v. *Bowen,* 70 Ind. 478 ; *Astley* v. *Capron,* 89 Ind. 167.

The judgment is affirmed, with costs.

