J. C. McMillan *et al.* v. The Board of County Commissioners of Payne County *et al.*

(Filed September 3, 1904.)

1. STATUTES—Repeal of by Implication Not Favored. It is necessary to a repeal of a statute by implication that the object of the two statutes must be the same. If they are not, both will stand even if they refer to the same object. (Following 97 U. S., 546). The act of the legislature of Oklahoma authorizing the construction of bridges, approved March 11, 1903, Sess. Laws 1903, p. 244, Held, Not to be repealed by implication, by the act of March 17 1903, page 236, concerning roads and bridges.

2. BRIDGES—Distance Between—Reconstruction of. Under the Act of March 11, 1903, a bridge may be constructed within less than six miles of a bridge already existing, where the proposed bridge is to be constructed within one mile of an incorporated town or city. And under the language of the act that bridges may be constructed, repaired and reconstructed, such bridge may be built at a point where another bridge now exists, which has become useless or rendered dangerous by decay or damage.

3. SAME—Taxation For—When Law Authorizing Not Void. An act of the legislature which authorizes a township to contribute to the erection of a bridge to be built under the supervision of the county commissioners, and which authorizes a tax levy for the purpose of meeting such contribution, is not void because it authorizes an unequal burden of taxation on the people of such township.

(Syllabus by the Court.)

*Error from the District Court of Payne County; before Jno. H. Burford, Trial Judge.*

*George S. Green* and *John W. Scothorn,* for plaintiffs in error.

*Williams & Burdick* and *Hunt & Bush,* for defendants in error.

### STATEMENT OF FACTS.

This was an action by the plaintiffs in error as plaintiffs in the court below, to enjoin the defendants in error from the levy and collection of certain taxes upon the taxpayers of Perkins township, Payne county, O. T., in satisfaction of a certain contract entered into by the board of county commissioners of said county with the Midland Bridge Company of Kansas City, for the construction of a bridge across the Cimarron river in said Perkins township, by the terms whereof Perkins township was to pay two-thirds of the cost of such bridge, amounting to $9.200.00, and the county of Payne was to pay one-third thereof, amounting to $4,600.

At the 1903 session of the legislature of the Territory of Oklahoma, (Sess. Laws of 1903, page 244,) there was passed an act approved March 11, 1903,. entitled, "An act authorizing the construction of bridges," and by the terms whereof it was provided that bridges more than two hundred feet in length may be constructed, repaired or reconstructed across any stream in the Territory, such bridges not to be located nearer than six miles of each other, except that more than one bridge may be built within one mile of any incorporated town or city, and may be constructed of wood, iron, steel, stone or other material.

The act then provides that whenever a stream requiring such bridge passes through an organized township, the board of trustees of such township shall have authority by and with the consent of the board of county commissioners, to order the construction of such bridge, and pay for two-thirds the cost of construction thereof by warrants drawn on the road and bridge fund of the township, which fund shall be created by tax levy on all the property in said township, which levy shall not exceed five mills per year, the warrants so issued to draw six per cent per annum from their date.

The same legislature passed another act relating to roads and bridges which was approved March 17, 1903, which conferred upon the board of county commissioners sole control of all bridges more than twenty feet long, and power to contract for their erection, and authorized the county commissioners to levy a general road and bridge tax on all the property of the county, not exceeding six mills on the dollar, for the purpose of constructing bridges over any river or principal stream in the county. This act provided that all bridges more than 20 feet long shall be under the control and supervision of the board of county commissioners. (Sess. Laws of 1903, page 236.)

At the commencement of this action a temporary injunction was granted, and afterwards a motion to dissolve the same came on to be heard before Hon. Jno. H. Burford, judge of the first judicial district of the Territory of Oklahoma, at his chambers in Guthrie, which hearing resulted in a judgment dissolving the temporary injunction theretofore granted, and from this order and judgment the plaintiffs appeal to this court.

Opinion of the court by

GILLETTE, J.: It is urged on behalf of plaintiff that the district court erred in not holding the act of March 11, 1903, repealed by implication in the passage of the act of March 17, 1903, authorizing the construction of bridges.

It is almost a stereotyped expression to say that repeals by implication are not favored.

In *Carpenter v. Russell,* 13 Okla. 277, 73 Pac. 930, this court, following *U. S. v. Greathouse,* 166 U. S. 601, states the rule as follows:

"It is also a well ·settled rule in construing statutory provisions that repeals by implication are not favored, and when two statutes covering in whole or in part the same matter are not absolutely irreconcilable, effect should be given if possible to both of them."

And this rule is universal; the courts, with varying language, declaring the same principle whenever called upon to construe apparently conflicting statutes.

In *United States v. Chaflin,* 97 U. S. 546, the court says:

"It is necessary to a repeal by implication that the object of the two statutes must be the same. If they are not, both will stand, even if they refer to the same subject." ·

Measured by this standard we find no irreconcilable or necessary conflict between the provisions of these two enactments. They both relate to county bridges, and their chief difference is in the manner of paying for them when constructed. The act of March 17 provides the manner in which the county may provide the necessary funds and build them, where the length of the bridge to be built is more than twenty feet. The act of March 11 provided the manner in which a township may aid the county in the construc-

tion of certain bridges, and the extent to which it may so aid the county, and the power which may be exercised by a township in determining the question whether or not such aid shall be given. The right of the township is limited to such work of internal improvement within the township, and enables the township to dictate the place of construction and the material to be used, thus exercising a power which cannot be employed by a township under the provisions of the act of March 17.

In this the act of March 11 is simply an act conferring powers upon the township, and in no way limits or abbreviates the powers of the board of county commissioners in the construction of bridges under the provisions of the act of March 17, nor is there any conflict between the provisions of the two acts further than the limitation contained in the act of March 11 concerning the distance between bridges.

Counsel for plaintiff in error say with reference to the act of March 17:

"The court will see from an examination of the act of March 17, 1903, that it is provided that all bridges more than twenty feet in length shall be constructed by the county."

If such act contained such provision there would be strong grounds for this contention, but we are unable to find such provision in the act, or to give the act such interpretation.

Sec. 3 provides that the board of county commissioners "shall have sole control of all bridges more than twenty feet long," and shall contract for their erection. But this is not a provision equivalent to saying that the county alone shall construct all such bridges. In fact, the subsequent provisions of said section would seem to require the reverse

of such construction, because of the provision authorizing the county commissioners in their discretion to enter into an agreement with any township board within the county, in cases where money may be appropriated from the road and bridge fund of the county, for the purpose of constructing any road or bridge in the township; and the further provision in said section that any incorporated city or town may appropriate funds to aid the township or county in the construction or improvement of any road or bridge, not only indicates that it was not the purpose of the act of March 17 to provide that bridges more than twenty feet in length "shall be constructed by the county," but the contrary is expressly shown to be the intention of the legislature. as incorporated cities may aid both the township and the county in the construction of any road or bridge. And these provisions in the act of March 17 seem to have been incorporated therein in order to harmonize the provisions of the two acts of March 11 and 17. We are therefore of the opinion that there is not such conflict between the acts under consideration' as to justify this court in holding that the act of March 11 was repealed by implication by the passage of the act of March 17, 1903. And we are further of the opinion that there is not such conflict between the two acts as that a general repealing clause in the act of March 17 repeals the said act of March 11.

It is urged by the plaintiffs in error that the tax levy for the construction of such bridge should be enjoined for the reason that such bridge is proposed to be constructed at a point on the Cimarron river in Perkins township where an old bridge now stands, south of the town of Perkins.

and within one mile of it. We do not think the position is tenable. The language of the first section of the act of March 11, "that bridges may be constructed, repaired or reconstructed across any stream in this Territory as hereinafter provided," plainly indicates that it is the purpose of the act to authorize the reconstruction of a bridge at a point where there is one already in existence. The word reconstructed as here used must be held to mean what is meant by the word in its ordinary use and acceptation, and this is defined by Webster, "to construct again, to rebuild."

While the language of the act is general and does not in terms limit the exercise of the power to cases where a bridge now in existence has become useless or dangerous by decay or damage, it is nevertheless the plain import of the language used, and turning to the evidence upon which the trial court acted we find the following testimony given by one W. A. Knight, who speaking of the bridge now in existence stated:

"The bridge is in a condition that we have to keep continually nursing it, repairing it, and have had for the last year. The trusses of the bridge are worn out, have rotted off where they go into the main part of the bridge, and we have had to shorten them up and cut them off on account of them being rotten, and put new trusses on to hold it. It is only temporary now. The piles that are now in there, part of them, during the high water, have sagged down the river and we have it now propped up temporarily only on top of that to hold that up. It is in a passable condition, just to say passable, but it is not safe at all, it is not considered. Many of the citizens on the south side of the river even now don't try to cross on that bridge; I think

they are unduly alarmed, perhaps, but we can't tell those conditions; they ford it a good deal of the time. We have been propping it up and repairing it from time to time now for the last year; sometimes there would be a day or two we can't go over it."

We think this language of the act, together with the proof submitted, must be held to legally, as well as equitably, justify the steps taken to reconstruct the bridge in question, the same being in Perkins township, and less than one mile from the town of Perkins.

The objection urged to the act of March 11, 1903, that it is in contravention of the Organic Act of the Territory, requiring uniformity in the taxation of property, cannot be sustained. The provisions of this act are applicable to any and all townships of the Territory that see fit or have occasion to take advantage of its provisions. It is not sufficient to say that because all townships of the Territory do not require the same privileges under the law that therefore you may not pass a law, the provisions of which accommodate only a few of the townships, or possibly but one of them, by the terms whereof a tax may be levied to meet its requirements. Laws may rightfully be passed by the legislature, general in their nature, and calculated to meet the various requirements of the political subdivisions into which the Territory may be divided for governmental purposes.

So long as different conditions exist in different municipalities, there can be no such thing as a uniform burden of taxation as applied to such different localities. If one township requires the bridging of a stream which passes through it, and another township has no such stream, and therefore no such requirement is necessary, a law which per-

mits the one requiring such bridge to incur a debt sufficient to build it, is not void because of the fact that it has provided a manner in which the people of the township may be taxed greater than it is necessary for those in the other township to be.

"A tax is uniform when it operates alike in all places where the subject of it may be found, and is not wanting in such uniformity because the thing is not equally distributed in all parts of the United States." (Bouvier L. D., 1097, citing 112 U. S. 580.)

It may be, as argued by counsel for plaintiff, that the passage of the law under consideration was unwise, and the enforcement unjust to the people of Perkins township, when measured by the rights and privileges of the citizens of other townships of Payne county, but this court cannot deal with such questions. It is not charged with the burden of determining the wisdom of legislation. It may only determine the question as to whether or not any given legislative act is within the constitutional province of the legislature to pass it.

Counsel for the plaintiff in error in support of their contention that the bridge in question is a county bridge, call attention to the fact that the bridge when built is to be built under the supervision of the board of county commissioners, accepted by them, and ever after maintained as other county bridges are maintained, and they say, "this brings us to the proposition whether or not Perkins township can be forced to build a bridge for Payne county."

The provisions of the act are permissory, only as are provisions of a statute which permits a township to build a bridge less than twenty feet in length. When once con-

structed they are open alike to the use of all the people of the county or Territory having occasion to use them. The roads or bridges of the Territory are public highways, opened and constructed under the authority of the legislature. They are denominated generally as county or township roads or bridges according as the legislature may authorize taxation for the purpose of constructing them, but neither the county nor township has such sovereign capacity as to be denominated the owner thereof, except with the consent of the Territory. They are subject at all times to the legislative will touching their construction, repair or maintenance, and we do not think the fact that a township has been authorized by the legislature to furnish money to construct a particular bridge necessary within the township is an imposition of an unjust tax upon the tax-payers of that township simply because it has been so authorized.

Counsel for the plaintiffs in error cite in support of their contention in this respect *McMean & Co. v. Chandler, et al.,* 9 Heisk [Tenn.] 349, where the court observes:

"A state burden cannot be placed upon any territory less than the entire state, nor a county burden upon a territory greater or smaller than the county." And supporting this principle they cite *Board of County Comimssioners v. The State,* 155 Ind. 604, where that court says:

"A tax imposed upon a township for the erection and maintenance of a jail in the county seat, which was to be located in such township, was unconstitutional, since under art. 10, sec. 1, a tax for county purposes must be uniform throughout the county."

Also *Wasson v. Board of County Commissioners of Wayne County,* 17 L. R. A. 795, in which the supreme court

of Ohio holds illegal an act of the legislature which author-
izes any county of the state to raise money by taxation to
secure the location of the Ohio agricultural experiment sta-
tion within the county; and *Livingston Co. v. Weider,* 64
Ill. 427, where the court holds illegal a tax levied by a coun-
ty under authority of the legislature of that state, for the
purpose of securing the location of the reform school.

We do not dissent from the conclusion reached by the
Indiana, Illinois and Ohio courts in the cases above cited.
The local taxes voted in each of the above cases are in sup-
port of governmental institutions. There is no local necessity
for them peculiar to the local subdivision of the state which
is sought to be taxed, and we think the facts in those cases
come clearly within the observations of the Tennessee court,
*supra,* and the like principle stated by Judge Cooley in his
work on Taxation, [2nd. Ed.] p. 141; but we think a dis-
tinction must be drawn between those cases and the one un-
der consideration. That there is a clear distinction between
the local necessity for a bridge and a state institution or a
county jail, must be apparent to all. The local necessity for
a bridge across a stream in a township is much greater to
the people of that township than it is to other townships of
the county or territory, although the people generally are
privileged to use it. To do without it however may be a dam-
age to the people of the township greater than the burden of
taxation necessary to construct it, and we see no reason why
legislative consent should be refused in such a case, or why,
when given, such consent should be held void because it per-
mits taxation greater in one locality than another. In this
we think we are supported by the supreme court of Indiana,

*Board of County Commissioners v. Washington Township,* 23
N. E. 257, from which we quote in part:

"Has a county a right to compel a township to bear
part of the expense of repairing a county bridge situated
within the limits of a township, and not within the control
of a town or city? The only statutory provisions which
bear directly upon the question are these: "If the probable
cost of constructing or repairing any bridge or culvert shall
exceed seventy-five dollars, the township trustee where such
bridge is to be located shall notify the board of commission-
ers of his county of the necessity of such a bridge or culvert;
and if, in the opinion of the county commissioners, the pub-
lic convenience shall require the building or repairing of
such a bridge or culvert, they shall cause estimates or sur-
veys thereof to be made, and cause the same to be erected.
The trustee of the township in which is located such bridge
or culvert shall, however, pay from the road fund of the
township seventy-five dollars of the cost of such buildings
or repairs.' Elliott's Supp. sec. 1586. These statutory pro-
visions, as it has been repeatedly held, do not relieve the
county from the duty of maintaining county bridges.
(*Board v. Emmerson,* 95 Ind. 579; *Board v. Bacon,* 96 Ind.
31; *Board v. Arnett,* 116 Ind. 438, 19 N. E. 299.) It has
been also held that the right of control is not in the town-
ship, but is in the county. (*Yeager v. Township, supra,*
81 Ind. 46; *Perry v. Barnett,* 65 Ind. 522.) In view of
the law thus authoritatively settled, but one conclusion is
logically possible, and that is this: A township is only lia-
ble to contribute in the case designated by the statute. This
is so because the general duty is imposed upon the county,
and the means of performing it is exclusively vested in its
officers. By ascertaining the case designated by the stat-
ute, we are enabled to determine whether this action will
lie, for, independently of the statute, it cannot be maintain-
ed. It is not difficult to ascertain what case it is which the
statute designates, for its words clearly indicate it. The

·case which it designates is in a case wherein 'the township trustees shall notify the board of commissioners of the ne- ·cessity' for a bridge or culvert, since this is the only case referred to, directly or indirectly, by the legislature. The statute does not empower the board of commissioners, of its own motion, to build or repair a bridge, and then demand contribution. On the contrary, it explicitly provides that ·contribution can only be enforced in a case where the town- ship takes the initiative. A county bridge must be kept in repair at the expense of the county, in all cases except one; and· that one case is a case in which the township trus- tees represent to the board that there is a necessity for a bridge, and secures action upon the representation. The county cannot, by its own unsolicited action, impose a bur- den on the township. This conclusion gives effect to the language of the statute, and is in harmony with all of our decisions."

It will be observed that the Indiana court had under consideration a statute in many respects identical with the statute of Oklahoma involved in this case. There, if the probable cost of constructing or repairing a bridge exceeded $75.00, the township trustee notified the board of county commissioners, and if the commissioners saw fit to build the bridge it became the duty of the township to pay from its road and bridge fund $75.00 toward the construction of the bridge. and this notwithstanding the fact the bridge is built by the county commissioners, and after construction becomes a county charge.

The supreme court of the same state in the case of *Board of County Commissioners of Martin County v. Mitchelltree Township*, 30 N. E. 937, again had under consid- eration liabilities of counties and towns arising under the same law, in which the decision in the case of the *Board of*

*Commissioners v. Washington Township* is upheld, and in this case judgment against the township for contribution to the county for the construction of a bridge, is affirmed.

A case closely analogous to the one under consideration, that of *Brilz v. Tannehill et al.*, 29 N. W. 242, was decided by the supreme court of Iowa, in which the court say:

"Under the statute (Miller's Code, 1886, 63, ·p. 149) which provides that it shall be lawful for any township ·to aid in the construction of county bridges when the estimated cost of the same is not less than $10,000.00 as fixed by the board of supervisors, but the aggregate amount of tax shall not exceed one-half of the estimated cost of the bridge sought to be aided, as fixed by the board of supervisors, the estimate of the board must precede the vote of the electors; and where such estimate has not been first made, the court, upon a writ of *certiorari* filed by a taxpayer, will set aside the tax as illegally imposed."

It will be observed that the Iowa statute is in substance the same as the Oklahoma statute, except that the liability of the township is fixed at fifty per cent of the estimated cost of bridges which do not cost less than $10,000.00, as fixed by an estimate of the board of supervisors, while under our statute townships are permitted to aid the county to the extent of two-thirds of the costs where the bridge is not less than two hundred feet long. Such law is upheld by that court from the plain import of the decision.

In the case of *Uhl v. The Township of Douglas, Butler Co.*, 27 Kan. 80, the court had under consideration the question of the liability of the township to pay to the plaintiff $100, which the town board had agreed on behalf of the township to pay in aid of the construction of a bridge across the Little Walnut River, the county having agreed to pay

$1,000 towards its construction, when subscription had been secured to the extent of $200.00; and Chief Justice Horton, concluding the opinion of the court, says:

"* * * Counsel for defendant contend that the several sections of the statute imposing upon township officers the duty of opening roads (bridges) refers to small bridges or culverts only, and not to the kind involved in this case. This concession gives to townships all the authority claimed in this instance. If they have the power to contract for small bridges or culverts, as the amount agreed to be paid in this case was limited to $100.00, the authority to make the contract under such concession cannot well be disputed. It is as advantageous and beneficial for the people of a township to have a bridge constructed over a river or other large stream within the township as over a small creek or stream. In our opinion, the bill of particulars filed before the justice was not defective, and stated facts sufficient to constitute a cause of action against the township."

These cases we think sustain the contention that townships under legislative authority many contribute to aid the county in the construction of a bridge which it is afterwards the duty of the county to maintain, notwithstanding the constitutional provision with reference to equal taxation.

Finding no error in the record, the judgment of the trial court will be affirmed.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.