STATE ex rel. SPECIAL ROAD DISTRICT No. 8, APPEL-
LANT, *v.* MILLIS, COUNTY TREASURER, RESPONDENT.

(No. 6,184.)

(Submitted October 22, 1927.  Decided December 7, 1927.)

[261 Pac. 885.]

*Highways — Roads and Road Districts — General and Special
Road Funds—Revenues Properly Belonging to Each—Statu-
tory Construction—Rules—Repeal by Implication.*

Same—Highways—Special Road Districts—What Moneys to be Placed
in General and What in Special Road District Fund.
  1.  Construing section 1617, Revised Codes, 1921, authorizing
  counties to levy annually a general tax of not less than two
  nor more than five mills for the construction and maintenance of
  public highways, the moneys collected to be placed in the gen-
  eral road fund, and section 1659, a part of a later Act (Chap.
  128, Part III, Political Code, 1921) providing for the creation
  of special road districts, under which they are given power, inter
  alia, to levy a tax not to exceed two mills for general road
  purposes on property in such districts, *held* that the revenue col-
  lected from the latter levy, like that from the former, must be
  placed in the general road fund of the counties, both being for
  general road purposes, and not in the road fund of any special
  road district into which must go funds derived from a levy
  authorized in addition to the two-mill levy, not to exceed five
  mills, for district purposes.

Statutory Construction—Statutes on Given Subject to be Construed
*in Pari Materia.*
  2.  Code sections upon any given subject must be taken together
  and construed *in pari materia,* and in case of seeming conflict they
  must be harmonized, if possible.

Same—Rule.
  3.  In the construction of a statute every word therein must be
  given some meaning, if possible; it must be construed so as best
  to effectuate the object of the legislature, and if a reasonable
  construction may be put upon it it is the one to be adopted,
  to the exclusion of others not reasonable.

Statutes—Repeal by Implication not Favored.
  4.  Repeals by implication are not favored; an existing law is
  not to be presumed repealed by a later one unless irreconcilably

---

  2.  Construction together of contemporaneous statutes *in pari ma-
teria,* see notes in 18 Ann. Cas. 424; Ann. Cas. 1915A, 186.  See, also,
23 Cal. Jur. 791; 25 R. C. L. 1009, 1062, 1066.
  3.  See 23 Cal. Jur. 722, 725, 730; 25 R. C. L. 961, 1000.
  4.  Repeals by implication, see notes in 14 Am. Dec. 209; 88 Am.
St. Rep. 271.  See, also, 23 Cal. Jur. 694; 25 R. C. L. 918.

repugnant or the latter revises the whole subject matter of the former; otherwise the later one will be regarded as an exception to or qualification of the prior general one.

[1–4]   Evidence, 22 **C. J.**, sec. 70, p. 137, n. 84.   Highways, 29 **C. J.**, sec. 492, p. 727, n. 74, 78; sec. 500, p. 740, n. 21.   Statutes, 36 **Cyc.**, p. 1071, n. 25, p. 1074, n. 37, p. 1079, n. 44; p. 1108, n. 46, p. 1110, n. 54, p. 1128, n. 58, p. 1147, n. 28, p. 1148, n. 31, p. 1149, n. 39, p. 1151, n. 58.

*Appeal from District Court, Stillwater County; H. J. Miller, Judge.*

SUIT by the State of Montana, on the relation of Special Road District No. 8, against W. M. Millis, County Treasurer of Stillwater County.   From a judgment for defendant, relator appeals.   Affirmed.

*Messrs. Wood & Cooke,* for Appellant, submitted a brief; *Mr. Sterling M. Wood* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. P. R. Heily,* County Attorney, for Respondent, submitted an original and a supplemental brief; *Mr. Choate* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

This is a mandamus suit.   The relator, the real plaintiff in interest, is a special road district and body corporate, situate in Stillwater county, organized and existing under and by virtue of the provisions of Chapter 128 of the Political Code (secs. 1652–1675, inclusive), Revised Codes, 1921, and it was such at all of the times involved in this litigation.   It will be called plaintiff or plaintiff road district.

Plaintiff road district instituted this suit to compel defendant to transfer, on the books of his office, from the general road fund account, to a separate fund and to the credit of plaintiff, certain tax money collected by him.   The complaint alleges that, each year, from 1917 to 1924, inclusive, the board of county commissioners of Stillwater county levied an assessment of two mills on all of the property in plaintiff road dis-

trict; that the levies were made for general road purposes and were in addition to annual levies made at the direction of the board of directors of plaintiff road district; that the levies were put on the books of defendant and, as a result, the property owners and taxpayers of plaintiff road district paid to defendant · the taxes accruing from such assessments, in the aggregate sum of about $7,500, being exclusive of payments made by reason of levies made at the direction of the board of directors of plaintiff road district; that defendant put and kept all thereof in the general road fund; that there has not been expended, upon the order of the board of county commissioners, more than $3,000 thereof; that defendant has been requested to place the remainder thereof to the credit of plaintiff road district in the fund provided by section 1661, Revised Codes, 1921, and has refused to do so; that plaintiff road district has no plain, speedy or adequate remedy at law. The complaint prays for an alternative writ of mandate, commanding defendant to place the funds in a separate fund to the credit of plaintiff road district or to show cause why he should not do so.

Alternative writ of mandate issued and was served. Defendant appeared and answered. No attack was made upon the sufficiency of the complaint. The answer admits the levy of the assessments and collection of taxes and that the proceeds were placed in the general road fund of the county; admits request upon defendant to place the money to the credit of plaintiff road district and refusal thereof; alleges that the levies were made for county general road fund purposes and were applicable generally to all property in the county alike and that the taxes accruing therefrom were paid into the general road fund of the county; alleges that all of the money so raised has been expended, by order of the board of county commissioners, for general road purposes; alleges that all of the money derived from such levies, during the years mentioned in the complaint, upon property situate in plaintiff road district, and more, was expended on public roads within that district. The answer makes some other and further defenses,

involving questions of fact, and prays for judgment for defendant. A reply was filed.

Trial was had to the court, without a jury. Judgment for defendant was rendered and entered. Plaintiff appealed from the judgment and assigns a number of specifications of error. The first thereof is that the trial court erred in entering judgment for defendant. The others relate to the admission of evidence under the issues of fact. We consider now the specification as to the judgment.

That specification raises the question of whether the tax money derived from the levies pleaded should have been placed in the general road fund of the county and expended by order of the county commissioners or should have been placed, in a separate fund, to the credit of plaintiff road district and expended by order of the directors of that district; a question of law. Counsel for plaintiff contend the latter course should have been followed; counsel for defendant, the former. That is the paramount issue raised under the pleadings in the case. The validity of any legislation involved is not attacked or questioned. The issue raises only the question of proper construction of legislation. Plaintiff road district bases this suit not on any objection to the levy of the taxes involved nor any objection to the raising or the collection of them. No objection is made to the levy, raising or collection of the taxes; that is all passed over, waived. No issue is based on anything of that kind. The suit is wholly a controversy about what should have been done with the tax money after the collection thereof; the disposition thereof; how and by whom it should have been expended. That is all we shall decide in this case. It is all we are called upon or required to decide. Plaintiff wants the money, if any be left; defendant claims it should have gone, as it did go, he claims, to the county. We address ourselves to that dispute.

The proper solution of that dispute depends upon the correct [1] construction of sections 1617, 1652, 1659, 1661 and 1662, Revised Codes, 1921. Section 1617 is a part of the general highway law of the state and sections 1652, 1659, 1661 and

1662 form a part of the special road district law of the state. Between section 1617, on the one hand, and the other sections mentioned, on the other hand, there may appear to be some conflict but, if so, we believe it only seeming and not real.

Section 1617, in part, says: "For the purpose of raising revenue for the construction, maintenance and improvement of public highways, the board of county commissioners of each county in this state shall annually levy and cause to be collected a general tax upon the taxable property in the county of not less than two mills and not more than five mills on the dollar, which shall be payable to the county treasurer, with other taxes. * * * All moneys collected under the provisions of this act shall belong to the general road fund of the county."

Section 1652 is the section which provides for the organization of special road districts. It was amended in 1923, to read as it now is, and, as amended, it says, in part: "The purpose of such road districts is to provide for the proper care, supervision and maintenance of existing public highways within such road districts, it being the intention of this act that county commissioners and county surveyors, or special deputy county surveyors, as herein provided, shall continue to have and exercise the authority now provided by law for them, in laying out, establishing and constructing new roads and bridges and repairing such existing roads and bridges in the county as the county commissioners may at any time by resolution determine. * * * Bridges over twelve feet in length shall be known as 'county bridges' and may be constructed by the county. Bridges twelve feet and under shall be known as 'district bridges' and be constructed by the special road district wherein the same is located. * * * Except as herein limited, all supervision, repair and maintenance of roads and highways shall be done by and be a charge upon the special road district; provided that when the county surveyor or special county surveyor, as provided in this section, may estimate any repair or construction work on any bridge or road to exceed one thousand dollars per mile in cost, in any one year, such repair

or construction shall be a charge upon the county." The only change made by the amendment is that it substituted the words "one thousand" (as to the cost of bridge or road) for the words "three hundred," in the original. With that exception, the section is as it was from 1917 to 1923, of the time involved in this litigation.

Section 1659, in part, says: "The board of county commissioners of any county where special road districts under the provisions of this act are organized may levy a tax for general road purposes of not to exceed two mills on each dollar of assessed valuation in said special road district and in addition to such two-mill levy shall levy a tax of not to exceed five mills on each dollar of assessed valuation, if such levy shall be requested by the directors of the special district, in writing, on or before the tenth day of August in each year. The said taxes shall be levied and collected, as provided by law, each year."

Section 1661, in part, says: "The county treasurer shall keep each of said funds so collected in a separate fund for each district, each entitled, 'Road fund of special road district No. —— of the county ——, and state of Montana,' and whenever sums are so collected and placed in each of said respective funds they shall be used in the creation, maintenance, operation and repair of the public highways and bridges, within the limits of such district, and not otherwise or in any other road district."

Section 1662, in part, says: "The county treasurer shall pay out money from said fund upon the written warrant of the president of the board of directors of said road district, countersigned and attested by the secretary thereof, which said warrants shall be drawn after verified bills have been regularly allowed at regular monthly meetings, as hereinafter provided for."

The sections must be taken together and construed in pari [2] materia. For purposes of construction, they are to be considered as forming one homogeneous and consistent body of law. (Endlich on Interpretation of Statutes, 54; *Congdon* v.

*Butte Con. Ry. Co.*, 17 Mont. 481, 43 Pac. 629; *State ex rel. Wooster* v. *District Court*, 58 Mont. 50, 190 Pac. 133; *State* v. *Bowker*, 63 Mont. 1, 205 Pac. 961.) The basis of section 1617 was originally enacted in 1874. It was continued, with more or less variation by amendment, until 1913, when substantially what is now section 1617 was enacted. Since then, it has remained substantially as it is now. Until 1917, the state had no special road district law; only the general highway law. In that year, was enacted the present special road district law, now Chapter 128 of the Political Code, Revised Codes, 1921, including sections 1652, 1659, 1661 and 1662.

It is our duty to harmonize the different sections hereinabove enumerated, if it may be possible. (Endlich on Interpretation of Statutes, 50; *State ex rel. Bitter Root Valley Irr. Co.* v. *District Court*, 51 Mont. 305, 152 Pac. 745; *City of Butte* v. *Industrial Accident Board*, 52 Mont. 75, 156 Pac. 130.) For that purpose, we examine them.

Section 1617, in stating the object of the section, uses these words: "For the purpose of raising revenue for the construction, maintenance and improvement of public highways"; meaning inevitably those of the whole county, for at the time of its enactment there were no special road districts. Following that language, the section provides for the levy to be made.

Section 1652, with relation to the purpose of the special road district law, says: "The purpose of such road districts is to provide for the proper care, supervision and maintenance of existing public highways within such road districts. * * * Except as herein limited, all supervision, repair and maintenance of roads and highways [meaning inevitably within a special district] shall be done by and be a charge upon the special road districts."

Section 1661, speaking of the disposition of funds raised for the use of a special district, says: "They shall be used in the creation, maintenance, operation and repair of the public highways and bridges, within the limits of such district and not otherwise or in any other road district."

[81 Mont. 86.]

It is manifest that money raised in the old way, by section 1617, before we had a special road district law, was to be used over the entire county, as and where needed, the county commissioners deciding.  That is still the case in a county which has no special district.  In a county which has a special district, undoubtedly section 1617 applies to all that portion of the county not in the special district.  In all the territory not in a special district the county commissioners "shall," in the language of section 1617, make a levy, on all of the property in that territory, of not less than two nor more than five mills.  The money derived therefrom must go into the general road fund of the county.   There is no trouble about that.

Now, having done that, in a county containing a special district, what must be done within the special district?   In the first place, according to section 1659, the county commissioners "may" make a levy on the property in the special district, of not over two mills.  If levied, as it was in this instance, for what purpose is it levied?   The section (1659, supra) says "for general road purposes."   Very well.   The money raised under section 1617 is raised for general road purposes.   Where is it put?   In the general road fund of the county.   Why should other money raised for the same purposes go elsewhere?   We do not see.   Then, a levy of not over two mills for general road purposes having been made, in the special district, by the commissioners, as was done here (two-mill levy), the commissioners "shall" make an additional levy, on the property of the district, of not to exceed five mills, if requested so to do by the directors of the district.   In this case it was requested and was done.

Now, what is to be done with the money raised by these two distinct levies, when both are made, as was done in this case?   As to that raised by the second and additional levy, made at the request of the district directors, there can be no doubt.   Section 1661 provides plainly it shall be put in a separate fund—separate from the general road fund of the county—to be expended by order of the directors.   The reason is obvious.   Under the special road district law, the most of the work in

a special district, it appears to us, is required to be done by order of the directors of the district. They must have money with which to pay for it. The additional levy provides it. Then, what of the money raised by the first levy of not over two mills? It seems to us it must go into the general road fund of the county. It so appears for a number of reasons.

In the first place, who decides upon the levy; whether or not to make it and, if so, how much? The county commissioners do. Why? The county commissioners have some voice about road work in all parts of the county. The commissioners may be of opinion that some work of the character required to be done by them will be needed in the special district during the ensuing year. If so, they must have funds with which to pay for it. They should not be left helpless. They should not be required to order work done and have no appropriate way of paying for it. If the county commissioners decide on a levy, on the property of the special district, of not over two mills, they make it. Then, if the directors of the district may feel that additional money will be required with which to make payment for the class of work that must be done by them or must go undone, they may cause to be made an additional levy of not to exceed five mills, the money from which will be expended upon their order. Each authority, the commissioners and the directors, has allotted to it separate work of a distinct character, in a special district. Obviously, it is the duty of each to have made therefor a levy sufficient to pay for the work it may calculate will have to be done by its order.

Again, if the commissioners, of their initiative, make a levy on the property of the special district "for general road purposes," they are limited to two mills and not to five, as for the rest of the county. Why? Manifestly, because the directors of the district may go as high as five mills additional, for making payment for work ordered done by them, making possible a seven-mill levy for the district, as against a possible five-mill levy for the rest of the county. The special district, though, as a result, would obtain more work on its roads. It should be borne in mind at all times that there are two dis-

tinct classes of work to be done in a special district; one to be done by the commissioners, another to be done by the directors; and that each class must be ordered and paid for by the authority in charge and responsible and funds must be provided for payment of each. Each authority seems to be responsible for raising its share of the necessary funds and each is so empowered.

The two-mill levy, or less, authorized to be made upon the initiative of the commissioners is, as we have seen, to be made "for general road purposes" and, if the money derived therefrom is to be paid out by the commissioners, for work ordered by them, perforce the money must go into the general road fund of the county. That is the only fund provided by the sections of the codes, hereinabove enumerated and herein involved, from which the commissioners may order money paid for road work done by their order. They may not order money paid from the "separate" fund of the special district. Section 1662 says money in the "separate" fund of a special district shall be paid upon the written warrant of the president of the board of directors of the special district, countersigned and attested by the secretary of the special district, after verified bills have been allowed by the board of directors. The method is exclusive. It may be said that, the money derived from the levy made upon the initiative of the commissioners being put in the general road fund, to be paid out on the order of the commissioners, the commissioners may expend a part or even all of it upon roads in sections of the county other than in the special district. So they may and, on the other hand, they may expend in the special district all the money derived from the levy made of their initiative upon the property of that district and more; all that and some derived by their levy "for general road purposes" in other sections of the county. Undeniably, it is within their power and discretion to do either and we are not prepared to say either course might not be justifiable, at times, in the discretion of the commissioners, as circumstances and needs might arise. Sudden freshets, floods, storms, excessive travel on

certain roads, more expensive roads in one section than another, many other causes, might justifiably invoke such discretion. The situation created is flexible, adjustable. County commissioners are required to exercise some discretion. That appears to be a reason for putting into the general road fund the money derived from the levy, upon property of a special district, which is made at the initiative of the commissioners and made, as the statute (sec. 1659, supra) says, "for general road purposes." County commissioners are presumed to do their duty and to exercise fairly their discretion. If they abuse their discretion, the people have a remedy at the polls, if no other be provided. It appears likely the legislature had in mind such contingencies when, in that connection, it used in section 1659 the words "for general road purposes." The words must have some meaning. They were put in the statute for some purpose. It is our duty to give them a meaning, if [3] possible, and the correct meaning. Every word in a statute must be given some meaning, if possible. (*City of Butte* v. *Industrial Accident Board,* supra; *State ex rel. Smith* v. *Duncan,* 55 Mont. 376, 177 Pac. 248; *State ex rel. Koefod* v. *Board of County Commissioners,* 56 Mont. 355, 185 Pac. 147; *State ex rel. Thacher* v. *Boyle,* 62 Mont. 97, 204 Pac. 378; *Mid-Northern Oil Co.* v. *Walker,* 65 Mont. 414, 211 Pac. 353; *City of Billings* v. *Public Service Com.,* 67 Mont. 29, 214 Pac. 608; *In re McLure's Estate,* 68 Mont. 556, 220 Pac. 527.) If it be the meaning of the words "for general road purposes" that they are designed to meet any such contingency, then the money derived from the levy with which they are connected must go into the general road fund of the county, with funds raised under section 1617. If otherwise, if the money from the first levy is to go into the same fund as that derived from the second levy provided for in section 1659, why interpolate any words of differentiation? We cannot see.

Again, if it be the iron-clad rule that all of the money derived from both levies provided for in section 1659, under all circumstances, is to be used in the special district, why divide the levies between the county commissioners and the

district directors? Why not leave it all to the directors and say they may have made, upon request, a levy of as much as seven mills? In our opinion, the legislature meant that the special district, in return for getting, in times of emergency, more than its proportionate share of help from the general road fund of the county, at the option of the commissioners, may be called upon to contribute to that common fund to the extent of a two-mill levy and then, if the district directors may want any money for use solely in their district, to be expended under their direction, they may have it, by asking for it, to the extent of an additional levy of as much as five mills.

Undoubtedly, the object of all of this legislation was to provide the public with adequate roads and bridges. Statutes are to be construed so as best to effectuate the object of the legislature. (Endlich on Interpretation of Statutes, 94; *Reeve* v. *City of Billings,* 57 Mont. 552, 189 Pac. 768; *State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309; *State ex rel. Carter* v. *Kall,* 53 Mont. 162, 5 A. L. R. 1309, 162 Pac. 385.) It seems to us the construction to be put upon the sections of the statutes which are herein involved, as herein by us indicated, is a reasonable one and the only reasonable one to be deduced. When a reasonable construction may be put upon statutes, it is the one to be adopted, to the exclusion of others, not reasonable. (Endlich on Interpretation of Statutes, 324; *Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836; *State ex rel. County Commrs.* v. *District Court,* 62 Mont. 275, 204 Pac. 600.)

If our views be correct, inevitably section 1661, when it says the county treasurer "shall keep each of said funds so collected in a separate fund for each district," contemplates there may be more than one special district in a county and means, in that event, that each separate fund for each special district in the county shall be kept separately; separate from one another and separate from the general road fund; the word "each" referring to the special district, as well as to its sepa-

rate fund. We believe that to be the meaning of section 1661. Section 1662, when it says "the county treasurer shall pay out money from said fund upon the written warrant of the president of the board of directors of said road district," attested and so forth, refers, we believe, to the separate fund of the special district, raised by the additional levy requested by the directors.

Counsel for plaintiff contend that the sections of the special road district law with which we have dealt are in conflict with section 1617, in so far as is concerned the disposition of money derived from levies upon property in special districts, and, therefore, being later of enactment than section 1617, supersede it—in effect, repeal it, in that respect. Counsel cite a number of Montana decisions in support of the contention. We have no dissent as to the decisions cited. We think, however, [4] counsel wrong in their premises. Repeals by implication are not favored. (*Jobb* v. *Meagher County*, 20 Mont. 424, 51 Pac. 1034; *Penwell* v. *Board of County Commissioners*, 23 Mont. 351, 59 Pac. 167; *State ex rel. Hay* v. *Hindson*, 40 Mont. 353, 106 Pac. 362; *Metcalf* v. *Wileman*, 49 Mont. 436, 143 Pac. 565.) Repeal of an existing law by a subsequent Act is not to be presumed "unless irreconcilably repugnant or the latter revises the whole subject matter of the former." (*State ex rel. Esgar* v. *District Court*, 56 Mont. 464, 185 Pac. 157.) We assent to the rule declared in *Reagan* v. *Boyd*, 59 Mont. 453, 197 Pac. 832, cited by counsel for plaintiff: "Where the special statute is later, it will be regarded as an exception to or qualification of the prior general one." We do not deem section 1617 repealed in any respect by the special road district law but only modified or qualified to this extent: that on property in a special district, instead of being compelled to make a levy of from two to five mills, for general road purposes, to go into the general road fund of the county, the county commissioners may make such a levy, not in excess of two mills, to go into that fund; that and no more. Therefore, we hold there is no conflict between section 1617 and the other sections

we have considered. The views we have announced find support in *McMillan* v. *Board of County Commrs.*, 14 Okl. 659, 79 Pac. 898, an analogous case, on principle.

We hold there is no merit in the specification of error we have discussed. We hold that the tax money derived from the levies in question properly was put in the general road fund of the county, to be expended by order of the county commissioners. Having thus decided, it is not necessary to discuss any other of the specifications of error.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.

Rehearing denied December 15, 1927.