CITY OF BILLINGS, Appellant, *v.* PUBLIC SERVICE COMMISSION et al., Respondents.

(No. 5,120.)

(Submitted March 10, 1923. Decided April 9, 1923.)

[214 Pac. 608.]

*Cities and Towns—Public Utilities—Fixing Rates—Powers of Public Service Commission—Statutes and Statutory Construction.*

Cities and Towns—Public Utilities—Franchises—Power of State to Regulate Rates.
1. A municipality and a party to whom it grants a franchise to construct and operate a public heating plant enter into the contract with the knowledge that while the municipality may contract respecting rates, the state may at any time thereafter in furtherance of the public welfare exercise its inherent power of rate regulation and control.

State—Powers—Restriction by Statute.
2. The state is not bound by the general language of a statute which tends to restrain or diminish its powers, rights or interests.

---

1. Right of city which has fixed rates for public service corporation to object to change by state or public commission, note, Ann. Cas. 1913D, 89.

Statutory Construction—Giving Effect to All Parts of Act.

3.   A statute must be so construed as to give effect to all its parts and no part of it will be held inoperative if it is reasonably possible to reach any other conclusion.

Public Service Commission—Power to Change Rates.

4.   The Act creating the Public Service Commission (Chap. 52, Laws of 1913 [Rev. Codes 1921, secs. 3879-3913]) confers upon the commission the power, within the lawful exercise of its authority, to change the rates, tolls and charges in public utility contracts, even though they existed prior to the passage of the Act.

Same—Power to Change Existing Rates—Statutory Construction.

5.   *Held,* that the last sentence in section 3892, Revised Codes of 1921 (sec. 12, Chap. 52, Laws 1913, Act creating the Public Service ·Commission): "This, however, does not have the effect of suspending, rescinding, invalidating or in any way affecting existing contracts," refers to the preceding sentence and not to the entire Act, and means that, until changed by the commission, the rates, tolls and charges were to remain as fixed in existing contracts, even though such contracts granted rebates, concessions and special privileges, and that pending change by the commission the public utility was protected from prosecution; overruling the decision in *Helena L. & Ry. Co.* v. *Northern Pac. Ry. Co.,* 57 Mont. 93, in so far as it conflicts with the above holding.

Cities and Towns—Not Entitled to Preference in Rates.

6.   A city, as such, which is a consumer the same as are its inhabitants who patronize a public utility, is not entitled to preference as to rates, under the provisions of the Act establishing the Public Service Commission, and therefore an order of the commission requiring it to pay the established rates and declaring a provision of a franchise granted the utility before the passage of the Act under which the grantee was compelled to furnish free heat to public buildings void, was correct.

*Appeals from District Court, Yellowstone County; Robert C. Stong, Judge.*

Action by the City of Billings against the Public Service ·Commission of Montana and the Billings Utility Company. From a judgment for defendants, and an order denying a new trial, plaintiff appeals. Affirmed.

*Mr. M. J. Lamb,* for Appellant, submitted a brief, and argued the cause orally.

Counsel for appellant has carefully examined all recent decisions of the courts pertaining to the powers, etc., of Public Service Commission, a considerable portion of which are col-

4.   Power of public service corporation to increase franchise rates, see notes in 14 Ann. Cas. 614; Ann. Cas. 1917C, 57; L. R. A. 1918F, 1106; 3 A. L. R. 730; 9 A. L. R. 1165.

lated and annotated in 3 A. L. R. 730–748, 9 A. L. R. 1165–1177, 1423–1437, and 10 A. L. R. 499–501, and is not oblivious to the fact that in most jurisdictions the rule that there is no such thing as inviolate right of contract on the part of a municipality to fix rates as against the sovereign power is well established, but submits that a distinction should be recognized between the power of a city to make rates for itself and the power to fix rates for its inhabitants.

That the franchise in question constitutes a contract is too well settled by numerous decisions of the courts to merit any discussion. (*City of Helena v. Helena Light & Ry. Co.,* 63 Mont. 108, 207 Pac. 337.) The franchise was accepted on August 13, 1907, hence was in effect a contract at the time the Public Service Commission came into existence on March 4, 1913. The city of Billings having the right to grant the franchise to the Billings Utility Company to use its streets, avenues and alleys for the purpose of laying and maintaining pipes and conduits, should also have the right and privilege of exacting some compensation from the grantee of the franchise to reimburse it for additional expense the city is subjected to in the maintenance of its thoroughfares by reason of the pipes and conduits occupying its streets, avenues and alleys. (4 McQuillin on Municipal Corporations, par. 1645; *People ex rel. Glen Falls* v. *Public Service Commission,* 225 N. Y. 216, 121 N. E. 777.)

By the concluding sentence of section 3892 of the Codes of Montana of 1921, the legislature evinced an intention that the sovereign power of the state should recognize contracts in existence at the time of the enactment of the statute and that such contracts fixing the amount of rates or charges to be made by public utilities should not be abrogated. In *Helena Light & Ry. Co.* v. *Northern Pacific Railway Co.,* 57 Mont. 93, 186 Pac. 702, this court held positively that by the last sentence of said section 3892 the legislature exempted contracts in existence at the time the law creating the Public Service Commission was enacted, and that therefore no power was dele-

gated or conferred on the commission to alter rates fixed by such contracts.

In view of the statements made by this court in the recent case of *City of Helena* v. *Helena Light & Ry. Co.*, 63 Mont. 108, 207 Pac. 337, reference to the rule followed in the states of New York, Ohio and Virginia would be superfluous. However, in view of the statements by the supreme court of New York in the case of *City of Niagara Falls* v. *Public Service Commission*, 229 N. Y. 333, 128 N. E. 247, counsel for appellant submits that the supreme court of New York adhered to the rule announced in *Quinby* v. *Public Service Com.*, 223 N. Y. 244, 119 N. E. 433.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. E. G. Toomey,* for Respondent Public Service Commission, submitted a brief; *Mr. Toomey* argued the cause orally.

There is no distinction, in view of the existence of the public service commission law, between the power of a city to make rates for itself and the power to fix rates for its inhabitants. Since the contract involved in the Billings franchise is one directly between the state of Montana, by and through its agent, the city of Billings, and the Billings Utility Company, as must always be the case (since the municipality is merely an agent of the state), it would seem perfectly clear that the state may waive any benefit which its agent receives by way of free heat, and the agent may not be heard to complain at all, and this is doubtless the proposition which the court had in mind when it said, parenthetically, "assuming that the city can raise the question" of impairment of contract. (*Portland* v. *Public Service Com.*, 89 Or. 325, 173 Pac. 1178; *Cortelyou* v. *Anderson*, 73 N. J. L. 427, 431, 63 Atl. 1097; *Public Service R. Co.* v. *Board of Commrs.*, 85 N. J. L. 123, 88 Atl. 818; 86 N. J. L. 696, 92 Atl. 1087; *State* v. *Board of Commrs.*, 85 N. J. L. 141, 88 Atl. 1096; *Public Service Electric Co.* v. *Public Utility Commrs.*, 87 N. J. L. 128, 93 Atl. 707; *Collingswood Sewerage Co.* v. *Borough of Collingswood,* 91 N. J. L. 20, 102 Atl. 901.)

The concluding sentence of section 3892, Revised Codes of 1921, does not, in anywise, prevent the Public Service Commission from abrogating or modifying contracts in existence at the time of the creation of the commission. (*Wichita R. R. and Light Co.* v. *Public Service Commission of Kansas,* decided November 13, 1922, by the supreme court of the United States.) The Utah supreme court has had a number of occasions within the past five years to adjudicate the Public Service Commission Act of that state which contained a proviso excepting from the operation of the commission, contracts for free or reduced passenger transportation "or other public utility service heretofore made founded upon adequate consideration and lawful when made." It, in a vigorous opinion, has clearly demonstrated that the exception does not impair the power of the commission to strike out preferential and discriminatory rates established by contract executed prior to the creation of the commission. (See *United States Smelting, R. & M. Co.* v. *Utah Power & Light Co.,* decided February 24, 1920, and found in P. U. R. 1921B, at page 837; see, also, *Salt Lake City* v. *Utah Light & Traction Co.,* 52 Utah, 210, 3 A. L. R. 715, 173 Pac. 556; P. U. R. 1918F, 377; *Union Portland Cement Co.* v. *Public Utilities Commission,* 56 Utah, 175, 189 Pac. 593, and *Murray City* v. *Utah Light & Traction Co.,* 56 Utah, 437, 191 Pac. 421.)

The free service clause in the franchise constitutes an unjust discrimination within the meaning of the Public Service Commission Act. (*Sandpoint W. & L. Co.* v. *City of Sandpoint,* 31 Idaho, 498, 173 Pac. 972; P. U. R. 1918F, 737; *Landon* v. *Lawrence,* P. U. R. 1915E, 763, 793 *et seq; Knott* v. *S. W. Tel. & Tel. Co.,* P. U. R. 1915E, 963; *Hollister* v. *Hollister Water Co.,* P. U. R. 1915D, 626; *Farmington Cham. of Com.* v. *Mountain States T. & T. Co.,* P. U. R. 1915F, 625; *Temple* v. *Mountain States Tel. & Tel. Co.,* P. U. R. 1915D, 716.)

The following cases have held franchise provisions for free or reduced rates of public service corporations as within constitutional or statutory provisions prohibiting discrimination:

(*Dubuque Electric Co.* v. *City of Dubuque,* 260 Fed. 353, 171 C. C. A. 219; *Kenosha* v. *Kenosha Home Tel. Co.,* 149 Wis. 338, 135 N. W. 848; *Winfield* v. *Pub. Ser. Com.,* 187 Ind. 53, 118 N. E. 531; *Charleston* v. *Public Ser. Com.,* 86 W. Va. 536, 103 S. E. 673; *Kilbourn City* v. *So. Wis. Power Co.,* 149 Wis. 168, 135 N. W. 499.)

*Messrs. Nichols & Wilson,* for Respondent Billings Utility Company, submitted a brief.

Courts have held that ordinances of this character fixing the rate should not be construed as a contract, in view of the constitutional provision prohibiting irrevocable or uncontrollable granting of special privileges. (*City of San Antonio* v. *San Antonio Public Service Co.,* 255 U. S. 547, 66 L. Ed. 777, 41 Sup. Ct. Rep. 428; *Re Dakota Central Telephone Com.,* 1921B, P. U. R. 783.)

Contracts made by a city, or by a private corporation, fixing the rate at which a public utility company shall perform services to the contracting party for a period of years cannot deprive a legislature authority of power to prescribe and enforce the payment of a high rate of charge for such service. (*Washington* v. *Public Service Com.* (Ind.), 129 N. E. 401; *Richmond* v. *Chesapeake Tel. Co.,* 127 Va. 612, 105 S. E. 127.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The city of Billings during the year 1907 granted to P. A. Williams a franchise, authorizing him to construct a plant for the purpose of distributing to the public hot water for heating purposes, and permitting him to lay and maintain pipes and the like under the streets and public places in the city in furtherance of that purpose. Among its provisions the ordinance fixed rates to be charged private consumers for heat to be furnished, and it was provided that: "The regulation and control of prices and rates for heating service under this ordinance shall be subject to any statute of this state relative thereto, now

in force or hereinafter enacted.'' The city received this preference: "The said P. A. Williams, his heirs, successors, or assigns, agrees to furnish heat to the city hall, fire station and library buildings during the life of this franchise, free of any charge or cost to the city, radiation and all connections to be installed and maintained by the city.'' Williams accepted the franchise and it seems that he and his successors, including the Billings Utility Company, hereinafter referred to as the Utility, complied with its terms until the order complained of here was made. As the result of hearings held in 1918 by the Public Service Commission, in which the affairs of the Utility were under consideration with reference to rates, the city was required to pay the Utility for the heat furnished to the city hall, fire stations and library buildings. Being dissatisfied, the city commenced this action against the commission and the Utility for the purpose of having the order vacated and set aside. Upon issues properly joined trial was had, whereupon the district court confirmed the commission's order by its judgment. The city moved for a new trial which was denied. The appeal is from the judgment and order denying a new trial.

The question for decision, therefore, is whether the commission had the right to establish a rate for the service furnished the city by the Utility notwithstanding the provision of the ordinance respecting free heat.

It is insisted by the city's counsel that the granting and acceptance of the franchise created an inviolable contract which may not be disregarded by the commission, for two reasons: (1) It is said the contract is inviolable under the provisions of the last sentence of section 3892 of the Revised Codes of 1921, that section being a part of the Act which created the Public Service Commission (Chapter 52, Laws of 1913); (2) but if it be conceded that the city had not the right to enter into an inviolable contract fixing rates for its inhabitants, it did have that right respecting rates for itself in its proprietary capacity.

1. It is conceded that the franchise constitutes a contract [1] between the city and the Utility. This obligation was

entered into by them with the knowledge that while the city was permitted to contract respecting rates, the sovereignty at any time, in furtherance of the public welfare, might exercise its inherent power of rate regulation and control. (*State ex rel. Billings* v. *Billings Gas. Co.*, 55 Mont. 102, 173 Pac. 799; *Sandpoint Water & Light Co.* v. *Sandpoint*, 31 Idaho, 498, L. R. A. 1918F, 1106, 173 Pac. 972.) That the legislature might set this power in motion was recognized by the very terms of the ordinance. When the legislature created the Public Service Commission as an administrative arm of the sovereignty, giving to the agency thus created ample authority to exercise through the police power of the state a supervisory control over all public utilities, the sovereign prerogative was asserted. In creating the commission the intention of the legislature was "to provide a comprehensive and uniform system of regulation and control of public utilities." (*Billings Gas Co. Case, supra.*) This language was approved in *Doney* v. *Northern Pacific Ry. Co.*, 60 Mont. 209, 199 Pac. 432, and is now approved again. If such was not the intention, then the Act creating the commission was and is a legislative mockery. Prior to the date upon which the Act was passed, every rate to a consumer of a product of a public utility in Montana rested on private contract between the consumer and the utility. Some of these rates were unjust, unreasonable, discriminatory, unduly preferential. To put a stop to practices of that character, to improve the service rendered by public utilities, to cause to be fixed just, reasonable and equitable rates for the service rendered, and to equalize the burden between consumers, manifestly were objects within the legislative intention. That the ordinary course of business should be continued without sudden disturbance and to guard against precipitate action, section 11 of the Act (3891) provided, among other things, that every public utility should file with the commission and make public its schedules showing all rates, tolls and charges then established for service performed, which should not exceed the rates in force at the time of the passage

of the Act, that a copy of these schedules under the direction of the commission should be printed and kept in every station or office of the utility where payments are made by consumers or users, open to the public, and that these should not be changed without the concurrenec of the commission.   Section 12 (3892) provided that: "It shall be unlawful for any public utility to charge, demand, collect, or receive a greater or less compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in such printed schedules.   *   *   *   The rates, tolls and charges named therein shall be the lawful rates, tolls and charges until the same are changed, as provided in this Act.   It shall likewise be unlawful for any public utility to grant any rebate, concession, or special privilege to any consumer or user, which, directly or indirectly, shall or may have the effect of changing the rates, tolls, charges, or payments, and any violation of the provisions of this section shall subject the violator to the penalty prescribed in section 3888 of this Code.   This, however, does not have the effect of suspending, rescinding, invalidating, or in any way affecting existing contracts."

In the *Billings Case, supra,* this court, having under consideration the effect of the concluding sentence of section 3892, said: "It is very clear that this sentence refers to the preceding sentence of the section exclusively, and not to the terms of the Act in its entirety."   That this is the correct interpretation we have not the slightest doubt.   Not only is this consistent with the plain rules of grammar as well as of statutory construction, but any other interpretation would lead to the absurd result that the legislature created in form a powerful agency for the public good which at the same time it throttled into a state of innocuous futility.   If it be held that the sentence applies to the entire Act, then it must follow that all contracts existing when the Act was passed are beyond the power of the commission, no matter what special privileges they carry, nor how unjust, discriminatory and unreasonable the contractual rates may be, nor how repugnant that construc-

tion would be to the purpose of the Act. When we comprehend the purpose of the Act, observe the broad regulatory powers granted to the commission by other sections of it, and follow the ordinary rules of statutory construction, we see that the legislature did not intend to, nor did it, bring about any such absurdity. It seems certain that by the use of the sentence in question, and upon a subject of so much importance, the law-making body could not have intended to curtail the exercise of the police power of the state. Such intention will not be inferred. This court heretofore has recognized the [2] rule that the sovereign authority is not bound by the general language of a statute which tends to restrain or diminish the powers, rights, or interests of the sovereign—the people. (*Aetna Accident & Liability Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760.)

Following its established practice, this court will endeavor [3] to construe an Act of the legislature so as to give effect to all its parts, and will never declare any part of it inoperative if it is reasonably possible to reach any other conclusion. Furthermore, it is reasonable to assume that, if the legislature had intended to apply the concluding sentence of section 3892 to the entire Act, it would have done so by placing the same in a separate section, or by expressing its intention in plain words.

What, then, is the true meaning of the sentence? Simply [4, 5] this: That, until changed by the commission, the rates, tolls and charges were to remain as fixed in existing contracts; that the passage of the Act did not *ipso facto* operate to invalidate or affect existing contracts, even though the contracts granted rebates, concessions and special privileges—which it was one purpose of the Act to eliminate from public utility life in this state. In other words, the sentence read with its context merely provided a device to maintain existing rates until such a time as the commission, after investigation, might see fit to change them. Pending that time the utilities were protected

from prosecution even though the existing contracts granted rebates, concessions and special privileges.

We conclude, then, that the Act did confer upon the commission the power, within the lawful exercise of its authority, to change the rates, tolls and charges in public utility contracts, regardless of whether they existed prior to the passage of the Act. This view is consistent with the great weight of authority. (*City of Helena* v. *Helena Light & Ry. Co.*, 63 Mont. 108, 207 Pac. 337; *Salt Lake City* v. *Utah Light & Traction Co.*, 52 Utah, 210, 3 A. L. R. 715, and note, 173 Pac. 556; see, also, 9 A. L. R. note 1165 *et seq.*; 10 A. L. R., note 499 *et seq.*)

It is not to be denied that the decision of this court in *Helena Light & Ry. Co.* v. *Northern Pacific Ry. Co.*, 57 Mont. 93, 186 Pac. 702, lends warrant to the city's contention in this case. In that case the court held that the last sentence of section 3892 applies to the entire Act; Mr. Justice Holloway dissenting. In neither of the opinions is the *Billings Gas Case, supra,* mentioned. It was overlooked by court and counsel. In the *Helena Case* the sole question presented to the court was whether the contract between the Helena Light & Railway Company and the Northern Pacific Railway Company by its terms gave to the latter company the privilege of renewing, or rather extending, it for an additional period. In neither brief was there any discussion of section 12 (3892), except one side affirmed and the other denied that it had a bearing on the question referred to above. An inspection of the record discloses that the briefs in the *Helena Case* were filed before the *Billings Gas Case* was decided, and its controlling force was overlooked by everybody. Had it been called to the attention of the court, the erroneous construction given the concluding sentence of section 3892 doubtless would have been avoided. The decision in *Helena Light & Ry. Co.* v. *Northern Pacific Ry. Co., supra,* in so far as it conflicts with what is said in this opinion, is now overruled.

2. Nor is there any basis for the city's contention that it is
[6] entitled to preference where its inhabitants would not
be.   The city is a consumer, as are its inhabitants who pat-
ronize the Utility.   When the city receives its heat free, the
Utility's other patrons foot the bill.   Discrimination of this
sort is not to be tolerated, and the commission was right in
putting a stop to it.   On this subject, see *City of Hillsboro* v.
*Public Service Commission*, 97 Or. 320, 187 Pac. 617, 192 Pac.
390; *Woodburn* v. *Public Service Commission*, 82 Or. 114, Ann.
Cas. 1917E, 996, L. R. A. 1917C, 98, 161 Pac. 391; *Public
Service Electric Co.* v. *Public Utility Commission*, 87 N. J.
L. 128, 93 Atl. 707; *Id.*, 88 N. J. L. 603, 96 Atl. 1015;
*Kenosha* v. *Kenosha Home T. Co.*, 149 Wis. 338, 135 N. W.
848; *Sandpoint Water & Light Co.* v. *Sandpoint, supra.*

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK
concur.