No. 80-358

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

CITY OF BILLINGS,

Petitioner and Appellant,

vs.

PUBLIC SERVICE COMMISSION OF MONTANA;
COUNTY WATER DISTRICT OF BILLINGS
HEIGHTS,

Respondents and Respondents.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Calton Law Firm, Billings, Montana
Calvin A. Calton argued, Billings, Montana

For Respondents:

Crowley, Haughey, Hansen, Toole & Dietrich, Billings,
Montana
Thomas Kelley argued, Billings, Montana
Robert Smith argued, Helena, Montana

Submitted: June 9, 1981

Decided: JUL 2 9 1981

Filed: JUL 2 9 1981

*Thomas J. Kearney*
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The City of Billings (hereinafter referred to as City) filed a complaint with the Public Service Commission (PSC) on June 17, 1974, to protest the unilateral expansion by the County Water District of Billings Heights (District) of its boundaries. The City had entered a contract with the District in 1963 pursuant to which the City was obligated to sell water to the District. The City alleged that the contract had been nullified, or in the alternative that the contract required the City to furnish water solely for use within the original District boundaries. Following a hearing on the matter, the PSC issued its Order No. 4366 in Docket No. 6349, dated July 20, 1977, in which it determined that it had no jurisdiction to interpret the contract, that it had no authority to fix the District's boundaries, that it would have the power to modify the contract if rates or service were adversely affected, but that such a showing had not been made by the City. The City filed a petition for judicial review of the PSC's order and a complaint seeking declaratory judgment defining the rights of the parties under the contract.

Pursuant to stipulation this action was submitted to the District Court without a hearing for a decision based on the PSC record and the District Court record. On July 24, 1980, the District Court entered its findings, conclusions and judgment affirming the PSC order and declaring the contract valid. The District Court further concluded that the City was obligated to provide water to the expanded District and that the District need not obtain the City's or the PSC's approval prior to expanding its boundaries. From the judgment the City appeals.

The City of Billings purchased the City Water Utility from the Montana Water Company in 1915. The Montana Public Service Commission has assumed jurisdiction over the utility since the Commission was created in 1913. Since the adoption of the

Municipal Revenue Bond Act of 1939 (section 7-7-4401, et seq., MCA), all major capital improvements have been made pursuant to the Act.

In 1958 the County Water District of Billings Heights was created under the authority of section 7-13-2201 et seq., MCA. In June of 1963 it contracted with the City to receive water service from the City system. Water bought from the City is sold by the District to its customers in Billings Heights who are within the District boundaries as established by the electors.

The contract provided that the District would build a water main from the District's reservoir to connect with a water main to be constructed by the City. Both parties performed these obligations under the contract, and the City has been providing water to the District through this system.

In 1971, the City petitioned the PSC for an increase in water rates in order to fund improvements necessary to meet the increasing demand for water. The PSC granted the rate increase and as part of its order No. 4044, Docket No. 6108, specifically approved the contract between the City and the District.

In 1972, the City sent a letter to William Johnson of the PSC recommending "the service area for the Billings Water Department" and requesting approval of the same.
On February 23, 1972, the PSC sent the City a letter approving the map of the water service area filed by the City. No hearing was conducted concerning the letters or the map, and the District was not notified at all. The Billings Heights service area was included on the map. The City has followed the same procedure for enlarging its service area since the PSC approval in 1972. Some enlargements of the Billings Heights service area were placed on the map in the same fashion.

On August 23, 1973, the District notified the City that it had received petitions asking that certain land be added to the District. The letter contained a notice of an election to be

- 3 -

held on September 19, 1973, pursuant to section 16-4531, R.C.M. 1947, (now codified as section 7-13-2341, MCA). The District explained that a new school was to be built on part of the land involved, that the school grounds were to be watered from a well, and that a few new homes would also be added. The letter stated that no additional burden to the City's water system was expected as a result of these additions.

The City objected to the election, contending that land could not be added to the District without PSC approval. The City had been experiencing severe water shortages. The District conducted the election and the land was added to the District. In a letter to the City, the District explained the urgent need for water service to the school in view of the fact that many of the wells were contaminated by sewage and the use of such water as drinking water could result in a health hazard.

The City filed a complaint with the PSC against the District for having added land to the District without the approval of the City and the PSC. The City contended that due to the water shortage the added service area would adversely affect the City's capability to serve its customers.

At the time of the hearing, a major expansion of the City water plant was underway to improve the water supply and distribution system. The PSC found it had no jurisdiction to interpret the contract between the City and the District but that it would have jurisdiction to modify the contract if an adverse impact on the City's ability to provide service was proved. No such impact was shown and the PSC declined to modify the contract.

The dispute was taken to the District Court in a combined action for judicial review of the PSC order and for declaratory judgment interpreting the contract. The District Court issued extensive findings of fact and conclusions of law affirming the PSC's order No. 4366 and otherwise supporting the District's

position that the City was obligated by contract to provide water service to the expanded District.

The issues raised on appeal may be stated generally as follows:

1) Whether the District Court erred in denying the City's motion to amend the findings and conclusions?

2) Whether the District Court erred in its determination of the extent of the PSC's jurisdiction of the matters arising in this litigation?

3) Whether the District Court erred in its determination of the issue presented for declaratory judgment, including questions of duration of the contract, rates and maximum service obligation?

Subsequent to oral argument on this matter, counsel for the City of Billings filed a motion requesting this Court to cause an investigation to be made to discover whether the full transcript of the PSC hearing and all exhibits were available to the District Court and to this Court. We find such an investigation unnecessary as the transcript, exhibits and maps are included in our record and were available to the District Court.

I. REVIEW OF DISTRICT COURT PROCEDURE.

The City argues that the District Court erred in denying the City's motion to amend the findings and conclusions. The City first contends that the District Court erred in adopting verbatim the proposed findings and conclusions of the District. The City argues that the court abandoned its duty under Rule 52(a), M.R.Civ.P., to "find the facts specially and state separately its conclusions of law thereon." In support of its argument the City cites Compton v. Gilmore (1977), 98 Idaho 190, 560 P.2d 861; Matheson v. Harris (1977), 98 Idaho 758, 572 P.2d 861; Pattison Trust v. Bostian (1976), 90 N.M. 54, 559 P.2d 842; Duffin v. Patrick (1973), 212 Kan. 772, 512 P.2d 442. However, the City has misconstrued these cases. In the instant case, the district

judge invited both parties to submit proposed findings and conclusions prior to making his decision. In the cases cited by the City, the judge made his decision and then requested pre-vailing counsel to draft the findings. The latter practice has been disapproved by the United States Supreme Court; nevertheless the findings are allowed to stand unless they are not supported by the evidence. U.S. v. El Paso Natural Gas (1964), 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12; U.S. v. Crescent Amusement Co. (1944), 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160.

In Tomaskie v. Tomaskie (1981), ____Mont.____, 625 P.2d 536, 38 St.Rep. 416, we discouraged the practice of adopting verbatim the proposed findings and conclusions submitted by the prevailing party. The purpose of the findings and conclusions is better served if the court prepares its own findings and conclusions, relying on the parties for guidance and assistance. However, the standard for review of the findings and conclusions remains the same:

> "[The adopted] findings, though not the product
> of the workings of the district judge's mind,
> are formally his; they are not to be rejected
> out-of-hand, and they will stand if supported by
> the evidence." U.S. v. El Paso Natural Gas,
> 376 U.S. at 656, 84 S.Ct. at 1047, 12 L.Ed.2d at 17.

We conclude that the findings are supported by the evidence and that the District Court committed no error in adopting the pro-posed findings of the District, particularly in view of the complexity of this case.

The issues to be determined in the declaratory judgment action were submitted to the court by a stipulation of the parties. The City contends that the District Court did not resolve in its findings and conclusions all of the issues presented by the City in that stipulation.

The District Court is not bound to rule on all of the issues stipulated by the parties in a declaratory judgment action. The court is entitled in its discretion to refuse to

rule on issues which are speculative, conjectural and academic, which are unnecessary to the resolution of an existing controversy or which merely seek legal advice on eventualities which may or may not arise in the future. Montana Department of Natural Resources and Conservation v. Intake Water Co. (1976), 171 Mont. 416, 558 P.2d 1110. The Uniform Declaratory Judgment Act is not a device to be used by litigants "to fish in judicial ponds for legal advice." Little v. Wachovia Bank & Trust Co. (1960), 252 N.C. 229, 113 S.E.2d 689, 701.

Moreover, we have reviewed the findings and conclusions and have found that all of the major issues were addressed by the District Court. No specific conclusions were made with respect to the effect of the Municipal Revenue Bond Act and the annexation, zoning and subdivision statutes on the jurisdiction of the PSC. Since those issues were discussed in the briefs submitted to the District Court, rejection of those arguments may be implied from the court's conclusion that the PSC had full regulatory power over the City.

We find that the District Court did not err in denying the City's motion to amend its findings and conclusions.

II. JUDICIAL REVIEW OF PSC ORDER.

The City argues that the District Court erred in its determination of the extent of the PSC's jurisdiction over the matters arising in this litigation. The District Court affirmed the order of the PSC in which the PSC made the following conclusions with respect to its jurisdiction:

1) That its approval in 1972 of service area boundaries for the City, which included the District, was an act in excess of its jurisdiction;

2) that it had full regulatory power over the City;

3) that its power over the District was limited to its authority to intervene in any contract made by a public utility;

4) that it has power to modify a contract only if the

- 7 -

contract poses an immediate threat to the City's ability to serve its customers or if it adversely affects the rate structure;

5) that the City's water service area does not include the District;

6) that the PSC has no authority to fix the boundaries of the District; and

7) that it had no authority to interpret the 1963 contract between the City and the District.

The City argues that the Municipal Revenue Bond Act of 1939, sections 7-7-4401 et seq., MCA, precludes jurisdiction of the PSC over the City. The Act provides that the City shall have power to prescribe fees for the services, facilities and commodities furnished by an undertaking financed pursuant to the Act. Sections 7-7-4404 and 7-7-4424(1), MCA. The Act does not mention the authority of the PSC, and thus the City argues that the PSC has no jurisdiction over a municipality operating a utility under the provisions of the Act. We disagree with the City's interpretation of the statute. For reasons which we will explain in our opinion in City of Billings v. Public Service Commission (No. 81-24), we conclude that the City does have the power to set rates, subject to modification by the PSC if such rates are unjust or unreasonable, section 69-3-330, MCA, and that the jurisdiction of the PSC is not limited by the Municipal Revenue Bond Act.

The City next contends that the statutes on annexation, section 7-13-4314, MCA; subdivisions, sections 76-3-101 et seq., MCA; and zoning, section 76-1-101 et seq., MCA, have a bearing on the jurisdiction of the PSC in this case. We have examined these statutes and find they are not relevant to the resolution of the issues presently before us.

Three further questions regarding the extent of PSC jurisdiction over the matters arising in this litigation are raised by the City as follows:

- 8 -

1) Does the PSC have authority to determine water service area boundaries of the City?

2) Does the PSC have any jurisdiction over the District with respect to its water service area boundaries?

3) What jurisdiction does the PSC have with respect to the 1963 contract between the City and the District?

With regard to the first jurisdictional issue, the City argues that the PSC has authority to determine the boundaries of the City's water service area, which the City contends includes the District. The City in 1972 submitted a "recommended service area" map to the PSC along with a letter stating that the area included the water districts served by the City and requesting approval of the water service area boundaries. The map included the Billings Heights District. The PSC approved the map and subsequently approved changes, including some changes within the District boundaries. The PSC in its order No. 4366 concluded that its approval of the City's water service area including the District was in excess of its jurisdiction. The PSC determined that the District was not within the City's water service area, noting that:

> "When a public utility makes a sale for resale,
> its service area stops at the point at which the
> product is transferred to the distributing
> utility. The service obligation also stops at
> that point. A customer of the District who was
> receiving poor service would look to the
> District to rectify the situation. He would
> have no remedy against the City, because he has
> no relationship with the City."

We agree that the District is a separate utility with its own water service area. The City is obligated by contract to sell water to the District and has no standing to object to the water service area of that utility.

The PSC has no jurisdiction over the expansion of the District boundaries. According to section 7-13-2341, MCA, control over the size of the District is expressly vested in the board of directors and the electors. The statute makes no men-

tion of a requirement of PSC approval before land may be added to a county water district. The PSC was not given jurisdiction to fix the boundaries of a county water district and as an administrative agency the PSC may not assume jurisdiction without express delegation by the legislature. City of Polson v. Public Service Commission (1970), 155 Mont. 464, 473 P.2d 508.

The PSC has no control over the water service area of a utility except to the extent of determining on a case-by-case basis whether adequate service is provided at reasonable rates to customers who are within the service area. City of Polson, supra; section 69-3-201, MCA.

Finally, what jurisdiction does the PSC have with respect to the contract between the City and the District? The PSC determined that it had no jurisdiction to interpret the contract and that it had power to interfere with a contract only if the contract presents an immediate threat to the utility's ability to serve or if the contract adversely affects the rate structure. The District Court correctly affirmed these conclusions.

Section 69-3-103(1), MCA, states that the PSC does not have judicial powers. Interpretation and enforcement of contracts are judicial functions. As stated by the North Dakota Supreme Court:

> "The Public Service Commission has no power to construe, enforce or adjudicate the validity or effect of the contract between the parties in question except as to its effect upon matters within its jurisdiction. That jurisdiction is dependent upon the statutes." Williams Elec. Cooperative v. Montana-Dakota Utilities Co. (N.D. 1956), 79 N.W.2d 508.

The jurisdiction of the PSC is limited to the regulation of rates and service as provided by the Montana statutes. Section 69-3-101 et seq., MCA. All contracts entered into by a public utility are subject to the paramount authority of the state to exercise its regulatory powers. State v. Billings Gas Co. (1918), 55 Mont. 102, 173 P. 799. In order to exercise its regulatory power the PSC must have and does have the power to

supersede or modify provisions of contracts made by utilities to the extent that rates and services are affected. State v. Billings Gas Co., supra; City of Billings v. Public Service Commission (1923), 67 Mont. 29, 214 P. 608. See also Preston County Light and Power Co. v. Renick (1960), 145 W.Va. 115, 113 S.E.2d 378.

After determining that its jurisdiction over the contract was limited, the PSC concluded that the City had failed to prove the existence of an immediate threat to its ability to serve or the existence of rate structure inequities. Therefore the PSC declined to interfere with the contract. The District Court affirmed the PSC order, finding it supported by substantial credible evidence.

The City argued that its ability to serve its customers was threatened because the District did not have an explicit limit on expansion of its boundaries when the City was facing severe water shortages. Testimony at the hearing showed that the City had indeed experienced water shortages. However, the hearing also showed that the City was engaged in an extensive program to improve its water service capabilities. Upon completion of the program, which was expected by 1977, the City would have a rated capacity of 70,000,000 gallons per day, an amount double the capacity of the City water system prior to the improvements. On the basis of this evidence, the PSC order No. 4366, dated July 20, 1977, concluded that the issue of a threat posed to the City's ability to serve was moot in view of the water plant expansions which eliminated the water shortages. There is substantial evidence to support this finding.

The City also argued that the "mains" and "volumes" clauses of the 1963 contract posed a threat to its ability to serve. The contract provided for the City to construct a 16-inch main to connect with a 16-inch main built by the District from its reservoir to the City's main. The contract provided:

> "All of the aforesaid water mains are to be operated, repaired, maintained and, when necessary, replaced or enlarged by the City at its expense."

With respect to volume, the contract stated:

> "The parties understand and anticipate that population and the use of water within the District will increase in the years to come and that there will be increasing demands upon the mains described in section (1) above and the pumping facilities initially installed as described in this section. In this regard <u>the City agrees that it will at all times furnish, operate and maintain at its own expense, water transmission mains and pumping facilities capable of providing water at a pressure and quantity sufficient to meet the demands of the District</u>, subject only to the following limitations:
>
> "(a) <u>The City shall not be required to provide to the District, during any 24-hour day, any more than twice the average daily amount of water used during June, July and August of the summer immediately preceding</u>.
>
> "(b) The City reserves the right to restrict the use of water by the District in the event a shortage of water makes it necessary to impose restrictions in use on all other users of City water. However, restrictions in use, if any, imposed upon the District, shall be no different than the use restrictions imposed within the City of Billings." (Emphasis added.)

The PSC found that the City had failed to prove any immediate threat to its ability to serve. Mr. Wright, a civil engineer for the City, testified that it was expected that a larger main would be required by the District in 1985. Mr. Wright also testified that the "volume" clause provided for a doubling of District usage every year. However, no figures of actual increase in District usage were provided. The testimony was speculative and showed no immediate threat to the City's ability to serve.

Finally, with regard to the City's attempt to prove rate inequities, the PSC found that rate issues were not raised in the complaint and were not properly a part of the proceeding. The PSC determined that it had the authority to modify the contract with respect to rates, but that it would review the matter in another proceeding. See City of Billings v. PSC (No. 81-24). The PSC properly excluded the rate evidence in this proceeding.

In summary, we hold that the PSC has no jurisdiction to

the City and the District

During the early days of the Public Service Commission, several cases dealing with the relationship of PSC power to existing contracts of public utilities were decided. In State v. Billings Gas Co., supra, the city granted a franchise to a gas company, and passed an ordinance fixing a maximum rate to be charged the city by the gas company for services. The franchise constituted a contract between the city and the utility. When the Public Utility Act was passed, the gas company submitted its rate schedule to the PSC and subsequently refused to reduce the rates as required by the contract with the city. The city then sought to compel the gas company to honor the contract. This Court recognized the city's right to contract for rates but noted that such right was subject to the authority of the state to exercise its regulatory power. The effect of the exercise of the state's power was explained as follows:

> "Our conclusion is that since 1913 the Public Service Commission has had exclusive jurisdiction over the subject of rate regulation of this [utility] company, that the provisions of the franchise contract fixing rates were superseded by the rates approved by the commission, and that the remedy of the city is by complaint to the commission if the rates now in effect are excessive." State v. Billings Gas Co. (1918), 55 Mont. at 112, 173 P. at 801-802. (Emphasis added.)

Thus, when the PSC exercises its jurisdiction over rates charged by a utility, the rate provisions are superseded but the remainder of the contract remains in effect. See also, City of Billings v. PSC (1923), 67 Mont. 29, 214 P. 608; City of Baker v. Montana Petroleum Co. (1935), 99 Mont. 465, 44 P.2d 735.

We hold that the 1963 contract between the City of Billings and the County Water District of Billings Heights is valid and binding on the parties under the existing circumstances.

- 14 -

determine the boundaries of a county water district and that the PSC has authority to modify or supersede a contract between a public utility and its customer if the contract poses an immediate threat to the utility's ability to serve or if the contract adversely affects the utility's rate structure. We further hold that the PSC's conclusion that the City of Billings failed to prove an immediate threat to its service ability is supported by substantial credible evidence and was properly affirmed by the District Court.

III. DECLARATORY JUDGMENT ACTION

The City's complaint for declaratory judgment requested the District Court to decide whether the 1963 contract was valid and binding, and whether the contract may lawfully require the City to:

(1) supply water mains of increased size to meet the District's increased needs in the future,

(2) serve any increased District area without limitation,

(3) subsidize the District, and

(4) be bound to a perpetual obligation.

The District Court concluded that the contract was valid and binding. The City contends that rate increases previously granted by the PSC had the effect of nullifying the contract. The District Court found otherwise in its conclusions of law as follows:

> "The PSC has modified the rate provisions of the contract by granting the City rate increases in 1972 and 1978, the percentage of which was not uniform with respect to the District and the City's other customers. Those increases granted the City were substantially greater in percentage for the District than for some of the other customers of the City. However, the granting of these rate increases did not invalidate or nullify the contract. The only impact of the orders granting those increases was to modify the rate provision of the contract." (Emphasis added.)

We agree that the exercise of the regulatory power of the PSC with respect to rates did not nullify the contract between

The District Court concluded that the 1963 contract was perpetual and that it could not be terminated without the consent of both parties. The court based its conclusion on the contract language obligating the City "at all times" to furnish sufficient water to meet the demands of the District, subject to the volume limitations set forth above. The only provision of the contract contemplating termination is as follows:

> "In the event the District ever becomes an incorporated city or town with its own mayor and council or commission form of government, the City's obligation to provide water to the District shall cease and terminate."

The City contends that Billings Heights will never become incorporated because of section 7-2-4103(2), MCA, restricting the forming of a municipal corporation unless the boundary thereof is more than three miles from the boundary of an existing town, which is not the case with Billings and the Heights. Therefore, the City argues that the contract is perpetual, and that perpetual contracts with a municipality are either unenforceable, terminable at will of either party upon notice, or subject to a reasonable time limit.

As discussed above, the purpose of the Montana Declaratory Judgment Act, sections 27-8-101 et seq., MCA, is to allow the parties to obtain resolution of issues arising from an existing controversy. Issues which are speculative or which are unnecessary to the resolution of an existing controversy cannot be decided as we cannot anticipate all of the circumstances which may arise in the future. We conclude that the District Court's finding that the contract is perpetual was unnecessary to the decision in this declaratory judgment action.

This matter arose when the District expanded its boundaries with the expectation that the City would honor its contractual obligation to supply sufficient water to meet the resulting increase in demand. The City contended that its obligation was limited to the original 1963 boundaries of

- 15 -

the District. The City has admitted that it is willing to continue to sell water to the District provided that the City's ability to serve its other customers is not adversely affected. The City's major concern is that if the contract is perpetual and if the District can continue to expand without consulting the City, then the City's ability to serve its other customers might be impaired. Not only is this argument speculative, but also it fails to take into account the power of the Public Service Commission to modify or supersede the contract in the event that the City's fears should prove to be justified in the future. Under the existing circumstances, however, the City failed to prove an immediate threat to its ability to serve its customers.

Moreover, we do not find that the language of the contract compels the interpretation given it by the District Court. Where a contract is not expressly made perpetual by its terms, construction of such contract as perpetual is disfavored. Southern Bell T & T Co. v. Florida East Coast Ry. Co. (5th Cir. 1968), 399 F.2d 854; West Caldwell v. Caldwell (1958), 26 N.J. 9, 138 A.2d 402; 1 Williston, Contracts 112 §38 (3rd Ed. 1957). In a case where a city donated water service to a university in order to induce the university to locate within the city, the court stated:

> "We do not think that the circumstances considered as a whole warrant the construction that the obligation was to exist perpetually, or forever. The time was to be measured by the existence of the university in Gainesville. We take judicial notice of the location as permanent but we do not indulge the clairvoyance that it will be perpetual. Herculaneum and Pompeii were permanent but history records that they were not perpetual." City of Gainesville v. Bd. of Control (Fla. 1955), 81 So.2d 514, 518.

The contract provides for termination in the event of the incorporation of the Heights as a city, an event which could conceivably occur if section 7-2-4103(2), MCA, were repealed. We interpret the phrase "at all times" to mean "at all times during the life of this contract." The life of the contract

- 16 -

is indefinite and may be terminated by the PSC if it finds such action necessary and within its jurisdiction over rates and service.

The City next argues that the contract provision requiring the City to maintain and, if necessary, enlarge the 16-inch mains is invalid because it requires the City to subsidize the District and to supply unlimited quantities of water. We see no merit in these contentions. The PSC has the power to intervene should it determine that rate inequities are present. Subsidization has not occurred to date, and should it occur in the future, the matter is subject to a separate rate proceeding. The contract does contain a limitation clause controlling the allowable increase of use by the District. The PSC has power to intervene if the City is unable to serve its other customers, but the City has as yet failed to prove any immediate threat. While the City would not be forced to maintain equipment lying outside of its boundaries, it may contract to do so, Crawford v. City of Billings (1956), 130 Mont. 158, 297 P.2d 292, and it has freely contracted to maintain and enlarge the water mains with the knowledge of the probability that the District's needs would increase in the future.

Finally, the City asks the Court to determine whether the City's obligation is limited to the original 1963 boundaries of the District. The District Court concluded that the contract was not ambiguous, that it contained no limitation on the area of the District, that the court was without power to insert such a provision, and that neither the City nor the PSC had authority to fix the boundaries of the District. We agree.

The contract requires the City to supply sufficient water to meet the demands of the District, subject to the volume limitations clause. While the City may be disenchanted with the contract, a court cannot insert provisions or limitations into the

contract. Danielson v. Danielson (1977), 172 Mont. 55, 560 P.2d 893. The parties clearly envisioned increases in usage of water by the District. Further, the City contracted with an entity, the County Water District of Billings Heights, which even at the time of execution of the contract had the power under Montana law to increase its boundaries. Parties to a contract are presumed to be aware of existing laws which affect the contract at the time of execution. Moses v. School Dist. No. 53 of Lincoln County (1939), 107 Mont. 300, 86 P.2d 407; Snider v. Yarbrough (1911), 43 Mont. 203, 115 P. 411.

The judgment of the District Court is modified to remove the finding that the contract is perpetual and, as so modified, is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

Hon. Gordon R. Bennett, Dist. Judge, sitting
in place of Mr. Justice John C. Sheehy

_____

Hon. Robert M. Holter, Dist. Judge, sitting
in place of Mr. Justice Daniel J. Shea

- 18 -