Filed 08/04/23

VERMONT SUPERIOR COURT

Addison Unit
7 Mahady Court
Middlebury VT 05753
802-388-7741
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-01214

---

Hon. James H. Douglas, Special Administrator of the Estate of John Abner Mead v. The President and Fellows of Middlebury College

---

### Ruling on Middlebury's Motion to Dismiss

In 1914, former Vermont Governor John Mead offered to give Middlebury College the financial resources to construct a chapel on its campus. Middlebury accepted, and the chapel soon was built and named the Mead Memorial Chapel. In 2021, Middlebury determined to remove the Mead name from the chapel and took down the sign so describing it.[1] Former Vermont Governor James Douglas, as the special administrator of Governor Mead's estate, then brought this action challenging the removal of the name from the chapel.[2] Governor Douglas claims that, in changing the chapel's name, Middlebury breached a contract with Governor Mead to the effect that the chapel would perpetually be known as the Mead Memorial Chapel. In the alternative, he claims that Middlebury breached the covenant of good faith and fair dealing inherent in that contract or has breached a perpetual condition as to naming rights that Governor Mead attached to the gift that funded the construction of the chapel.

Middlebury has filed a motion to dismiss. Based on the extensive allegations of the complaint and the documents incorporated by reference into it, Middlebury argues that there was no contract—there was a gift, and the gift was not burdened by any perpetual condition as to naming rights. Because there was no contract, it argues, there could be no breach of the covenant of good faith implicit in all contracts. It further argues that Governor Douglas, as special administrator, lacks "standing" to enforce any

---

[1] The circumstances that prompted Middlebury to do so are dwelled upon in great detail by the parties, and are deeply disputed, but are largely irrelevant to this decision. If only for context, the court briefly notes that by the time Middlebury made its decision, Governor Mead had become controversial, rightly or wrongly, due to perceptions about his role in the eugenics movement, and it was in the circumstances of that controversy that Middlebury made its decision.

[2] The Rutland probate court appointed Governor Douglas a special administrator specifically to bring this suit. The court presumes that Governor Mead's heirs assented to the appointment and this litigation.

perceived restriction on the gift as only the Attorney General is empowered to do so.[3] The parties are deeply divided on all these issues as well as the propriety of ruling on them as a matter of law in the current procedural posture of the case.

*Donor standing*

To the extent that the underlying transaction falls under gift law, the parties refer to the propriety of a special administrator, as opposed to the Attorney General, bringing a suit of this sort on behalf of a donor's estate as one of standing, which in turn appears to lead them to characterize the matter as affecting the court's subject matter jurisdiction. The court presumes, however, that they use the term standing euphemistically to refer to the real-party-in-interest rule or simply whether there can be a cause of action. As the Vermont Supreme Court recently has summarized,

> Vermont courts' subject-matter jurisdiction is limited to "actual cases or controversies." Standing is one of several prerequisites to satisfy the case-or-controversy requirement. It is thus "fundamentally rooted in respect for the separation of powers of the independent branches of government." "The gist of the question of standing is whether [the] plaintiff's stake in the outcome of the controversy is sufficient to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

*Ferry v. City of Montpelier*, 2023 VT 4, ¶ 11 (citation omitted). Middlebury does not argue that this case presents these sorts of issues and somehow strikes at the heart of the separation of powers among the branches.

Rather, it argues that Governor Douglas is trying to do what only the Attorney General properly can. Rule 17(a) requires that "Every action shall be prosecuted in the name of the real party in interest." Standing is frequently confused, often harmlessly, for other doctrines, including the real-party-in-interest rule and basic cause of action principles. See 13A Wright & Miller, Federal Practice & Procedure: Civil 3d § 3531. However, such "conceptual confusions" can have unintended consequences. *Id.* ("But conceptual labels may carry real consequences. Lack of 'standing' to raise a federal claim may persuade a court that it lacks subject-matter jurisdiction and cannot exercise supplemental jurisdiction. A decision characterized in standing terms may not carry the claim-preclusion consequences that should flow from what in fact is a dismissal for failure to state a claim." (footnotes omitted)).

A real-party-in-interest defect or the mere lack of a cause of action does not affect the court's subject matter jurisdiction, and the matter may be raised under Rule 12(b)(6)

---

[3] No party has indicated that anyone has attempted to involve Vermont's Attorney General in this case or the issues that prompted it.

23-CV-01214 Hon. James H. Douglas, Special Administrator of the Estate of John Abner Mead v. The President and Fellows of Middlebury College

(failure to state a claim upon which relief may be granted) rather than Rule 12(b)(1) (defect in subject matter jurisdiction).[4] 5B Wright & Miller, Federal Practice & Procedure: Civil 3d § 1357.

Middlebury raises this issue only to the extent that this case falls under gift law as opposed to contract law. Either way, the court is not persuaded that there is a real-party-in-interest defect or that the cause of action automatically fails because it is brought by an administrator on behalf of the donor's estate rather than by the Attorney General. Middlebury essentially argues that under the common law of Vermont, only the Attorney General can enforce a limitation on a completed gift in a charitable trust. It cites as authority only one Vermont case in which the Attorney General was involved in litigation over a charitable trust. This case does not involve a charitable trust.

More to the point, Middlebury has come forward with no concrete authority that would compel Vermont's Attorney General to take action in a case of this sort or require her to consider it. Nor has it convincingly explained why the Attorney General would have any interest at all in enforcing the disputed naming right "condition" in this case. While Middlebury points to out-of-state authority generally in support of its "standing" argument under the common law, that authority is not monolithic. See generally, e.g., *Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, 723 N.Y.S.2d 426 (2001) (permitting wife of deceased donor to sue to enforce terms of charitable gift). The law in Vermont on this matter is substantially undeveloped, and the Vermont Attorney General has not attempted to intervene in this action or otherwise assert any *exclusive* authority to bring suit. Nor is there any statute or case law clearly so providing. It is apparent that Middlebury is not concerned that it should be facing a different adversary so much as it is simply trying to get the case dismissed. Without more compelling authority that the Vermont attorney general has *exclusive* authority to sue, in these circumstances, the court declines to conclude that the special administrator of Governor Mead's estate is an improper party to do so.

The principal issues, then, are whether the transaction is subject to gift or contract law, and whether the disputed perpetual naming right exists at all. Middlebury raises these issues under Rule 12(b)(6).

*Procedural standard*

The Vermont Supreme Court has described the familiar standard for Rule 12(b)(6) motions to dismiss for failure to state a claim as follows:

---

[4] Rule 17(a) expressly provides, however: "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

"A motion to dismiss . . . is not favored and rarely granted." This is
especially true "when the asserted theory of liability is novel or extreme," as
such cases "should be explored in the light of facts as developed by the
evidence, and, generally, not dismissed before trial because of the mere
novelty of the allegations." In reviewing a motion to dismiss, we consider
whether, taking all of the nonmoving party's factual allegations as true, "'it
appears beyond doubt' that there exist no facts or circumstances that would
entitle the plaintiff to relief." We treat all reasonable inferences from the
complaint as true, and we assume that the movant's contravening
assertions are false.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations
omitted).

In applying this standard, the court notes that a complaint is supposed to be a
"short and plain statement of the claim[s] showing that the pleader is entitled to relief."
V.R.C.P. 8(a). The complaint in this case is neither short nor plain. Rather, it is
extremely lengthy and outwardly appears to touch on all the evidence (however relevant)
available at the time it was filed. At the July 27 hearing in this matter, Governor
Douglas nevertheless asserted the need to engage in discovery in pursuit of additional
relevant evidence, while Middlebury asserted that there is no material evidence left to
unearth. The adequacy of the opportunity for discovery may come up if Governor
Douglas resists summary judgment on that basis in response to a Rule 56 motion by
Middlebury. Given the subtlety and nature of the issues and the procedural posture of
the case, however, the court cannot now simply assume that the recitation of the
evidence in the complaint, extensive though it may be, is fully exhaustive of what exists
to be found and then attempt to rule as a matter of law based on that universe of facts.
In short, the ordinary Rule 12(b)(6) standard applies in this case as it would in any other.

### Whether the transaction sounds in contract or gift law

So far as the allegations of the complaint go, it is apparent that Governor Mead
intended to give Middlebury the funds necessary to construct a chapel, and there is at
least *some* evidence that he intended or requested that it be named the Mead Memorial
Chapel. Governor Mead's initial written communication with Middlebury includes this:
"I desire to erect a chapel to serve as a place of worship for the college, the same to be
known as the Mead Memorial Chapel." Governor Douglas prefers to characterize the
ensuing transaction as a contract in which Governor Mead gave Middlebury the funds to
construct the chapel in exchange for the right to have that chapel perpetually named the
Mead Memorial Chapel. In the alternative, he asserts that the funding was a gift subject
to a perpetual condition subsequent as to naming rights. Putting aside for the moment
the question of whether a perpetual naming right was contemplated at all, Middlebury
argues that the transaction must be characterized as falling under gift law rather than
contract law.

The court declines to rule on this issue at this time. The issue is potentially subtle and will be better addressed on a developed factual record. "To be a gift, a transfer must be made with donative intent. The requirement of donative intent is the essence of a gift." Restatement (Third) of Property (Wills & Don. Trans.) § 6.1 cmt. b. "Donative intent is to be distinguished from donative motive. The motive for making a gift is a complex matter and does not determine whether or not a gift was intended. The relevant criterion is intent to transfer an ownership interest gratuitously, as opposed to engaging in an exchange transaction or making an involuntary transfer." *Id.* Finally, "To be a gift, the transfer must be made without consideration." *Id.* cmt. e.

"[A] gift is not ordinarily treated as a bargain, and a promise to make a gift is not made a bargain by the promise of the prospective donee to accept the gift, or by his acceptance of part of it. *This may be true even though the terms of gift impose a burden on the donee as well as the donor. In such cases the distinction between bargain and gift may be a fine one, depending on the motives manifested by the parties*." Restatement (Second) of Contracts § 71 cmt. c (emphasis added); see also *id.* § 24 cmt. b ("[P]roposal of a gift is not an offer within the present definition [of offer]; there must be an element of exchange. Whether or not a proposal is a promise, it is not an offer unless it specifies a promise or performance by the offeree as the price or consideration to be given by him. It is not enough that there is a promise performable on a certain contingency."); John K. Eason, Private Motive and Perpetual Conditions in Charitable Naming Gifts: When Good Names Go Bad, 38 U.C. Davis L. Rev. 375, 409–12 (2005) (discussing the distinction in the context of naming rights).

Thus, the issue may well boil down to the parties' intentions at the time of the transaction and determining the character of those intentions from the available evidence may be a very subtle endeavor. Such an inquiry will be better undertaken on a developed factual record, not the mere allegations of the complaint.[5]

*Either way, was a perpetual naming right contemplated at all?*

Middlebury argues that no naming right, much less a perpetual one, was contemplated at all. Governor Douglas argues instead that the circumstances imply it, and he seeks the opportunity to develop more evidence in support of it.

The court notes that if the transaction is considered to be a contract, perpetual terms in contracts generally are disfavored. "Although a construction [of a contract] conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract, a perpetual contract will be enforced, if the terms are clear. A contract which purports to run in perpetuity must be adamantly clear that that is the

---

[5] Because it is not yet clear that a contract exists at all, the court declines to address whether the name-change could have violated an implied covenant in that contract if not the terms of the contract itself.

23-CV-01214 Hon. James H. Douglas, Special Administrator of the Estate of John Abner Mead v. The President and Fellows of Middlebury College

parties' intent, in order to be enforceable. A contract will not be construed as imposing a perpetual obligation when to do so would be adverse to public interests." 17B C.J.S. Contracts § 608 (footnotes omitted); see also *CNH Indus. N.V. v. Reese*, 138 S.Ct. 761, 763–64 (2018) ("[C]ontracts that are silent as to their duration will ordinarily be treated not as 'operative in perpetuity' but as 'operative for a reasonable time.'" (citation omitted)); *Glacial Plains Coop. v. Chippewa Valley Ethanol Co., LLLP*, 912 N.W.2d 233, 236 (Minn. 2018) ("In general, contracts of perpetual duration are disfavored as a matter of public policy; thus, while we will enforce a contract that unambiguously expresses an intent to be of perpetual duration, we construe ambiguous language regarding duration against perpetual duration."); *Jespersen v. Minnesota Min. & Mfg. Co.*, 700 N.E.2d 1014, 1017 (Ill. 1998) ("[P]erpetual contracts are disfavored."); *Barton v. State*, 659 P.2d 92, 94 (1983) ("We are also unwilling to imply—as a matter of law—a term in the contract which would bind the State in perpetuity. In our view, such a term would violate public policy."); *City of Billings v. Pub. Serv. Comm'n of Montana*, 631 P.2d 1295, 1306 (Mont. 1981) ("Where a contract is not expressly made perpetual by its terms, construction of such contract as perpetual is disfavored."); *Thompson v. Miller*, 100 N.W.2d 410, 412 (Iowa 1960) ("A contract for life will be upheld only where the intention, that the contract's duration is for life, is clearly expressed in unequivocal terms.").

To the extent that the transaction is considered to be a gift with a perpetual condition subsequent, such conditions similarly are disfavored. "Because noncompliance with the conditions of a conditional gift results in a forfeiture of the gift, the conditions must be created by express terms or by clear implication and are construed strictly." 38A C.J.S. Gifts § 39. "The intention of the donor to create a condition subsequent must clearly be expressed, and, if it is doubtful whether a clause in a deed is a condition subsequent, courts will always lean against construing it as such. 14 C.J.S. Charities § 33. Vermont cases touching on these principles include *Wilbur v. University of Vt.*, 129 Vt. 33, 43 (1970) ("Beyond that, we do not interpret the restriction as imposing a true condition subsequent. Such a construction is disfavored." (so stating in the trust context)); *President & Fellows of Middlebury Coll. v. Cent. Power Corp. of Vt.*, 143 A. 384, 390 (Vt. 1928) ("Furthermore, conditions subsequent are not favored in the law, and if the language of an instrument can be otherwise construed, without violating the plain intent of the maker thereof, it will be done." (so stating in the will context)); see also *Mayor and Aldermen of City of Annapolis v. West Annapolis Fire and Improvement Co.*, 288 A.2d 151 (Md. 1972) ("Our prior decisions make it clear that when a gift is made to a charitable corporation, even though it be made for a particular purpose and it proves impossible or impractical for the donee to perform the donor's desires, no condition subsequent will be implied unless there is a clear expression of the grantor's intention that there be a gift over on default."); *Tennessee Div. of United Daughters of the Confederacy v. Vanderbilt University*, 174 S.W.3d 98, 115 (Tenn. Ct. App. 2005) ("Because noncompliance results in a forfeiture of the gift, the conditions must be created by express terms or by clear implication and are construed strictly.").

Whether framed under contract or gift law, proof that a perpetual naming right was intended ultimately will have to satisfy an elevated standard of clarity to be

enforceable.  The court declines to catalog the evidence referred to in the complaint that currently may point in one direction or the other.  For now, the question is simply whether Governor Douglas has alleged that such a naming right was intended.  The complaint is fairly read to include such an allegation.  See V.R.C.P. 8 ("All pleadings shall be so construed as to do substantial justice.").

Order

For the foregoing reasons, Middlebury's motion to dismiss is denied.

Within two weeks counsel shall confer and agree upon a proposed scheduling order for the court's consideration this matter.  Unless both parties agree otherwise, the proposed schedule shall include a mediation at the appropriate time.

SO ORDERED this 4th day of August, 2023.

Electronically signed on 8/4/2023 3:35 PM, pursuant to V.R.E.F. 9(d)

_____
Robert A. Mello
Superior Judge